# United States Court of Appeals for the Federal Circuit

2009-7117

JOHN L. GUILLORY,

Claimant-Appellant,

v.

ERIC K. SHINSEKI, Secretary of Veterans Affairs,

Respondent-Appellee.

Mark A. Delphin, Delphin Law Offices, of Lake Charles, Louisiana, for claimant-appellant.

Scott D. Austin, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for respondent-appellee. With him on the brief were Tony West, Assistant Attorney General, Jeanne E. Davidson, Director, and Martin F. Hockey, Jr., Assistant Director. Of counsel was Meredyth Cohen Havasy, Trial Attorney. Of counsel on the brief was Michael J. Timinski, Deputy Assistant General Counsel, Office of the General Counsel, United States Department of Veterans Affairs, of Washington, DC.

Appealed from: United States Court of Appeals for Veterans Claims

Judge Lawrence B. Hagel

# United States Court of Appeals for the Federal Circuit

2009-7117

JOHN L. GUILLORY,

Claimant-Appellant,

v.

ERIC K. SHINSEKI, Secretary of Veterans Affairs,

Respondent-Appellee.

Appeal from the United States Court of Appeals for Veterans Claims in
06-2926, Judge Lawrence B. Hagel.

_____

DECIDED:  April 27, 2010

_____

Before MAYER, LINN, and DYK, <u>Circuit Judges</u>.

DYK, <u>Circuit Judge</u>.

John L. Guillory ("Guillory") appeals from a decision of the United States Court of Appeals for Veterans Claims ("Veterans Court") affirming the Board of Veterans' Appeals ("the Board").  The Board found no clear and unmistakeable error ("CUE") in a March 30, 1992, regional office ("RO") decision that assigned an effective date of May 1991 for an award of special compensation resulting from the diagnosis of a service-connected seizure disorder.  The Veterans Court affirmed in <u>Guillory v. Peake</u>, No. 06-2926, 2008 WL 5155291 (Vet. App. Dec. 9, 2008).  The Veterans Court also dismissed Guillory's claims for increased compensation for the "loss of [use of] trunk through the knee, to include the buttocks," for lack of jurisdiction.  <u>Id.</u> at *4.  We dismiss the appeal

insofar as it contests the court's determination as to the seizure disorder, but we remand for further consideration as to the claim arising from the loss of the use of both buttocks and the right and left trunks through the knee.

BACKGROUND

I

In order to understand the nature of the veteran's claim, some background on the Department of Veterans Affairs ("VA") disability compensation scheme is required. Generally, veterans receive compensation for service-connected disabilities based on the degree of severity of the injury. Veterans are rated from 0%-100% disabled, with monthly payments starting with 10% disability and increasing for each 10% increase in disability rating. See 38 U.S.C. § 1114(a)-(j). Extraordinarily disabled veterans already receiving a 100% disability rating under section 1114(j) ("total disability") may also be eligible to receive an additional award for "special monthly compensation" ("SMC"), over and above the monthly amount for total disability. Id. § 1114(k)-(s). A veteran is eligible for SMC if he meets precisely defined statutory criteria. Id. For example, in order to qualify for SMC under subsection (*l*), a veteran must have "suffered the anatomical loss or loss of use of both feet, or of one hand and one foot." Id. § 1114(*l*). Subsections (*l*), (m), (n), and (o) represent disabilities of increasing severity, for which the veteran is entitled to increasing levels of SMC. See id. § 1114(*l*)-(o).

Additionally, under subsection (k), a veteran can also receive an additional monthly payment for certain disabilities, separate from the disabilities described in subsections (*l*) through (o). 38 U.S.C. § 1114(k). Subsection (p) of section 1114 allows for a half-step increase to the next higher SMC rate when a veteran exceeds the

requirements set forth in the previous rate, but does not qualify for the next highest rate. Id. § 1114(p). Current law allows an individual to qualify for intermediate SMC under subsection (p) even when such disability had also been the basis for entitlement to compensation under subsection (k). See 38 C.F.R. § 3.350(f)(1)-(4). For example, an additional independent disability (not already entitling the veteran to SMC payments under (l)-(o)) meriting a 50% disability rating (regardless of whether already compensated under subsection (k)) results in a half step SMC rate increase, while an additional independent 100% disability rating results in a full step SMC rate increase. Id. § 3.350(f)(3)-(4).

The law also provides for additional SMC above and beyond that authorized by 38 U.S.C. § 1114(k)-(p) under subsection (r)(1), where the veteran "is in need of regular aid and attendance." Until 1979, the entitlement to "aid and attendance" SMC required a SMC rating of "(o)." See Veterans' Disability Compensation and Survivors' Benefits Amendments of 1979, Pub. L. No. 96-128, § 104, 93 Stat. 982, 984. Current law provides that a veteran is eligible for aid and attendance if he is entitled to receive at least the rate under subsection (o) or the intermediate rate between subsections (n) and (o) authorized under subsection (k). See 38 U.S.C. § 1114(r).

II

With this background in mind, we turn to the facts of this case. Guillory served in active duty in the U.S. Army from June 1964 to October 1966, including service in Vietnam. While serving in Vietnam, he received multiple injuries from a gunshot wound, and was subsequently discharged. In June of 1967, a VA RO awarded Guillory a combined 100% disability rating for "chronic brain syndrome associated with trauma,

with triplegia." J.A. 19. Based on the RO's rating decision, Guillory received compensation at the total disability rate pursuant to 38 U.S.C. 1114(j). The RO also granted SMC under 38 U.S.C. § 1114(p), at the rate between subsection (*l*) and (m) on account of the loss of use of the lower extremities, effective from the date of discharge. The RO also granted a separate SMC rating under subsection (k) for the loss of use of a hand. Guillory did not appeal the RO decision, and it became final.

During the period between 1967-1992, Guillory's SMC disability rating was progressively increased as a result of a number of rating errors and intervening changes in the law. Additionally, in 1992, the RO granted service connection for a seizure disorder, based on a 1991 examination report diagnosing a seizure disorder, and awarded a 100% disability rating for the seizure disorder. Because this additional independent disability qualified Guillory for another full-step increase in his rating under subsection (p) from (n) to (o) pursuant to 38 C.F.R. § 3.350(f)(4), he was then eligible for and was awarded aid and attendance under subsection (r), effective May 1991 (the date of the seizure diagnosis).

In 1997 Guillory requested a review of his file to determine whether he had been paid the correct amount of compensation, stating his belief that he "should have been paid at the higher rate under (p) plus [aid and attendance]" at the time of the original rating in 1967.[1] See J.A. 48. In an April 2001 statement, Guillory alleged the following errors in the VA's rating decisions: 1) error in the RO's failure to rate and compensate

---

[1] There was a delay in response to Guillory's request for a file review because his claims file had been lost. The VA reconstructed his claims file from agency documents as well as documents provided by Guillory. When a veteran's claims file has been lost, the VA has a heightened duty to explain its findings and conclusions. See Marciniak v. Brown, 10 Vet. App. 198, 200 (1997).

him for the loss of use of both hips, thighs, and buttocks, and 2) error in the RO's assignment of a 70% rating for loss of use of the right hand. In September of 2001, Guillory submitted a Statement in Support of Claim (VA Form 21-4138) asserting CUE in the VA's failure to award aid and attendance under 38 U.S.C. § 1114(r) effective the date of his original rating in 1966. In an October 2001 rating decision, the RO concluded that only when the evaluation for seizure disorder was assigned a 100% rating in 1991 did the veteran become entitled to aid and attendance under subsection (r)(1). Guillory sent a written notice of disagreement with the rating decision, and was issued a "Statement of the Case," which summarized Guillory's claims as follows:

> The veteran contends . . . that he was paid the incorrect rate from the onset following service. . . . He further states that the <u>VA failed to rate him for loss of both bottom limbs and his whole right side. He states they only rated him for his knees down and not above. He feels that he should have been rated N1/2 plus k in 1966</u>. He states that they corrected him to M1/2 in 1977. <u>However, when he was given M1/2 plus k they did not consider that the hips were involved as well as the buttocks</u>.

J.A. 90 (emphases added).

In 2003, Guillory appealed to the Board, which concluded that the RO's various ratings decisions were not the product of CUE ("the 2003 Board decision"). The Board noted that Guillory had been properly rated at the various points throughout the rating history, finding that he failed to provide any evidence of record showing that his service-connected disabilities entitled him to a higher rating than he was assigned. Additionally, the Board concluded that "there is no specific probative evidence demonstrating that the veteran had a seizure disorder prior to May 1991," and thus a higher rate of compensation based on the seizure disorder was not assignable prior to May of 1991. J.A. 112.

On appeal, the Veterans Court remanded due to the Board's failure to discuss or acknowledge a VA medical treatment record dated August 1975 that appeared to reflect a diagnosis of seizure disorder. Guillory v. Principi, No. 03-678, 2005 WL 103060, at *4 (Vet. App. Jan. 4, 2005) ("the 2005 Veterans Court decision"). On appeal, Guillory appeared to have also raised a challenge to the RO's rating decision independent of the seizure disorder. For example, Guillory's informal brief in that case stated the following:

> BVA did not grant loss of use of right arm, elbow, scapula, and shoulder, refer R-46 thru R-67. R-67 shows award only for loss of use of right hand. BVA should have awarded for loss of use of right scapula, shoulder, elbow, wrist, fingers, and thumb. . . . BVA did not award me for loss of use of trunk, hips. Refer R-46 thru R-67 to prove BVA did not award for Loss of use from both Right and left Trunk thru Knee, which includes buttocks. Refer R-73 proves these losses present as of 27 June 66. BVA should have awarded according to Title 38 rating schedule for compensation and pension the following: If a veteran is already rated at 100% he should be awarded an intermediate rate or the next higher rate for loss of use of both buttocks or a K award for loss of use of each part of his anatomy. A veteran may receive up to 3K awards and I am receiving only 1 K award.

Petr.'s Informal Br. at 4-5, Guillory, 2005 WL 103060 (No. 03-678). With respect to Guillory's "remaining arguments," the court stated that "those arguments need not be addressed at this time." Guillory, 2005 WL 103060, at *5. The court indicated that "[o]n remand, Mr. Guillory is free to submit additional evidence and argument, including those arguments raised in his brief." Id.

In its remand decision, the Board again concluded that prior to May 1991, there was "no evidence of record showing that the veteran's service-connected disabilities exceeded the requirements of subsection (n)," thus warranting "an intermediate rate under subsection (p)." J.A. 22. The Board also concluded there was no evidence that Guillory's seizure disorder was severe enough to warrant a 100% disability rating prior

to 1991, because the 1975 record only showed a diagnosis of seizure disorder, without any findings of episodes of seizure.

On appeal, the Veterans Court affirmed this ruling, holding that "the Board's finding that the March 1992 regional office decision did not contain clear and unmistakable error is not 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law .'" <u>Guillory</u>, 2008 WL 5155291, at *6. The Veterans Court also concluded that "[t]he April 2003 Board decision that was vacated and remanded by this Court did not contain any issue regarding the loss of trunk through the knee, to include the buttocks. . . . [Thus] the Board did not err in not addressing those issues. . . . [B]ecause those issues are not the subject of the Board decision currently on appeal, the Court does not have jurisdiction to address them." <u>Id.</u> at *4.

Guillory timely appealed the Veterans Court's judgment, and jurisdiction is asserted under 38 U.S.C. § 7292(d).

DISCUSSION

This court's jurisdiction to review decisions of the Veterans Court is limited by statute. <u>See</u> 38 U.S.C. § 7292. We have jurisdiction over "all relevant questions of law, including interpreting constitutional and statutory provisions." 38 U.S.C. § 7292(d)(1). We lack jurisdiction to review any challenge to a factual determination or the application of a law or a regulation to the facts of a particular case. <u>Id.</u> § 7292(d)(2). A determination of the jurisdiction of the Court of Appeals for Veterans Claims is a question of law that we review de novo. <u>See</u> <u>Hudson v. Principi</u>, 260 F.3d 1357, 1362 (Fed. Cir. 2001).

The briefs for both Guillory and the government are somewhat opaque. On appeal, Guillory appears to challenge two aspects of the Veterans Court's decision. First, he contends that the court erred in refusing to find CUE in the 1992 RO decision that declined to award aid and attendance retroactively to 1966, apparently based on the allegedly pre-existing seizure disorder and CUE in earlier ratings decisions that failed to award compensation for the seizure disorder. In order to qualify for aid and attendance, a veteran must have an SMC rating under subsection (o), or the rate between subsections (n) and (o) authorized under subsection (k). See 38 U.S.C. § 1114(r). According to the Board and the Veterans Court, until Guillory received the 100% rating for the seizure disorder in 1991, his rating of (n)+(k) made him ineligible to qualify for aid and attendance, and therefore there was no CUE in earlier ratings decisions not awarding a service connection for the seizure disorder. Guillory does not make the argument that the Veterans Court misinterpreted subsection (r) or raise any other issue of statutory interpretation. Instead, he disagrees with the findings of fact and application of law to fact by the Board and the Veterans Court that he did not meet the criteria for additional aid and attendance SMC. He contends that certain records indicating that he was taking prescription medications to treat seizures demonstrate that his seizure disorder dated back to 1966. He also relies on recorded observations by medical doctors dating back to 1967 suggesting the need for aid and attendance. However, the onset and severity of the seizure disorder are questions of fact beyond our jurisdiction to review. Thus, we dismiss the appeal insofar as it challenges the ruling on the seizure disorder.

Second, Guillory challenges the jurisdictional determination of the Veterans Court. The government argues that whether Guillory should have been rated for loss of use of right and left trunk through knee including buttocks was not a new argument related to his CUE claim upon appeal, but was a separate claim of CUE that must be brought in a separate CUE proceeding. Appellee's Br. 38-40 (citing Andre v. Principi, 301 F.3d 1354, 1357-58 (Fed. Cir. 2002)). The Veterans Court determined that it lacked jurisdiction over the issue, stating that "[t]he April 2003 Board decision that was vacated and remanded by this Court did not contain any issue regarding the loss of trunk through the knee, to include the buttocks. . . . [Thus] the Board did not err in not addressing those issues." Guillory v. Peake, 2008 WL 5155291, at *4.

This jurisdictional determination is erroneous. As the background discussion and procedural history of the case indicate, Guillory has always made two separate arguments for entitlement to aid and assistance SMC: 1) the contention as to the earlier onset of his seizure disorder, entitling him to a 100% disability rating that would increase his SMC rating by a full step; and 2) the contention that he was mistakenly rated independent of the seizure disorder, due to the loss of use of his right and left trunk through knee and buttocks, thus entitling him to a higher rating retroactive to 1966. Thus, this is not a case where the veteran raised for the first time on appeal a new claim of CUE, separate and distinct from the claims that the Board addressed below.

Moreover, contrary to the Veterans Court decision, the 2003 Board decision did address this issue.[2] Although the 2005 Veterans Court decision did not specifically address the argument, it remanded the question for further consideration by the Board and granted Guillory an opportunity "to argue those claimed errors before the Board at the readjudication" and "submit additional evidence and argument, including those arguments raised in his brief." Guillory, 2005 WL 103060, at *5. Accordingly, a remand is necessary for the court to address this claim on the merits. We express no opinion whether this CUE claim has merit or, if it does, what consequences the error may have had, if any, given the then-existing requirements for establishing a right to aid and attendance SMC.[3]

Finally, Guillory further asserts that he has been deprived of his constitutional right to procedural due process, because his claims have not been properly addressed. We have held that veterans' benefits are a protected property interest under the Fifth Amendment, because they are statutorily mandated and nondiscretionary in nature. Cushman v. Shinseki, 576 F.3d 1290, 1298 (Fed. Cir. 2009). In Cushman, we held that

---

[2] The 2003 decision discussed Guillory's contentions that "he was not rated and not compensated for the loss of use of both hips, thighs, and buttocks," J.A. 101, which was also part of the Statement of the Case. The Board then concluded that at the various points throughout Guillory's rating history, he had been properly rated, as he failed to provide any evidence showing that his service-connected disabilities exceeded the requirements of the subsection he was assigned. Thus, it appears that the Board in 2003 dismissed this argument because there was insufficient evidence as to these alleged disabilities.

[3] Guillory also argues that the VA committed CUE in failing to award the "triplegia rate retroactive to 1966." Appellant's Br. 6. It is unclear if this claim is distinct from his assertions regarding the loss of use of his trunk and buttocks. However, as this argument also goes to the contention that he was improperly rated independent of the seizure disorder, it is appropriate for consideration on remand.

there was a violation of due process where there was no adequate remedy under existing statues and regulations to address the VA's reliance on an improperly altered medical record.  Id. at 1298-99.  However, here there is no due process issue since, unlike the situation in Cushman, the statutes and regulations provide an adequate remedy for any error that occurred in prior proceedings.

Thus, we dismiss-in-part, reverse-in-part, and remand for further consideration.

<u>DISMISSED-IN-PART, REVERSED-IN-PART, and REMANDED</u>

COSTS

No costs.