# United States Court of Appeals for the Federal Circuit

---

**LIONEL GUERRA,**

*Claimant-Appellant,*

v.

**ERIC K. SHINSEKI, SECRETARY OF VETERANS AFFAIRS,**

*Respondent-Appellee.*

---

2010-7080

---

Appeal from the United States Court of Appeals for Veterans Claims in Case No. 08-223, Judge William A. Moorman.

---

Decided: April 29, 2011

---

ZACHARY M. STOLZ, Chisholm, Chisholm & Kilpatrick, of Washington, DC, argued for claimant-appellant.

LAUREN A. WEEMAN, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent-appellee. With her on the brief were TONY WEST, Assistant Attorney General, JEANNE E. DAVIDSON, Director, and MARTIN F. HOCKEY, JR., Assistant Director. Of coun-

sel on the brief was MICHAEL J. TIMINSKI, Deputy Assistant General Counsel, and RACHAEL T. SHENKMAN, Attorney, United States Department of Veterans Affairs, of Washington, DC.

---

Before BRYSON, GAJARSA, and MOORE, *Circuit Judges.*

Opinion for the court filed by *Circuit Judge* BRYSON.
Dissenting opinion filed by *Circuit Judge* GAJARSA.

BRYSON, *Circuit Judge.*

This case requires us to construe one of the statutes providing benefits for disabled veterans. The issue on appeal is whether the Court of Appeals for Veterans Claims ("the Veterans Court") correctly interpreted a statute that provides additional monthly compensation to certain severely disabled veterans. We hold that it did, and we affirm.

Pursuant to congressional direction, the Department of Veterans Affairs ("DVA") has promulgated a "disability ratings schedule" that it uses to determine the level of a veteran's disability and thus the amount of the veteran's monthly disability benefits. The ratings in the table are based on the agency's assessment of the reduction in the average veteran's earning capacity that results from various service-connected injuries, diseases, or conditions. 38 U.S.C. § 1155; 38 C.F.R. § 4.1; *see Guillory v. Shinseki*, 603 F.3d 981, 983 (Fed. Cir. 2010). A particular disability can be rated in ten percent increments from 0% to 100% (total disability). The rating assigned to a particular disability under the ratings table is referred to as the schedular rating. The veteran's schedular rating governs the veteran's entitlement to compensation at the statutory levels provided in subsections 1114(a)–(j). A veteran

rated at 10% has, on average, 90% of the earning capacity of a nondisabled individual and receives compensation at the rate established in subsection 1114(a). A veteran who is rated at 100% is deemed to be totally disabled and receives compensation at the rate established in subsection 1114(j).

Some disabled veterans have multiple service-connected disabilities. To determine the veteran's overall disability rating in such cases, the DVA rates each disabling condition individually (unless otherwise provided in the ratings schedule). 38 C.F.R. § 4.25; *see Amberman v. Shinseki*, 570 F.3d 1377, 1380 (Fed. Cir. 2009). The DVA then combines all the individual ratings, as directed by the "combined ratings table," 38 C.F.R. § 4.25, to calculate the veteran's combined disability rating. Compensation for the combined rating is then calculated according to the statutory schedule in section 1114.

In addition to having a schedular rating of 100%, a veteran can also be rated as totally disabled, and thus entitled to benefits at the statutory level for total disability, if the veteran is unable to maintain gainful employment as a result of service-connected disability. In that case, even if the veteran does not qualify for a schedular rating of 100%, the Secretary can rate the veteran as "totally disabled based on individual unemployability," a rating referred to as TDIU. 38 C.F.R. § 4.16(b). If the veteran's claim for a total disability rating predicated on TDIU is based on "one . . . disability," that disability must be ratable at 60% or more under the rating schedule. For the purpose of TDIU, "one disability" includes multiple disabilities resulting from a single accident and multiple disabilities affecting a single bodily system. *Id.* § 4.16(a).

Some exceptionally disabled veterans who are rated as totally disabled are entitled to extra monthly compensation over and above the "total" rate provided in 38 U.S.C. § 1114(j). This case requires us to construe one of those special monthly compensation provisions, 38 U.S.C. § 1114(s). That statute provides $320 in additional monthly compensation above the rate for total disability to a veteran with "a service-connected disability rated as total" if the veteran either has another independently rated disability or combination of disabilities rated at 60%, or is permanently housebound by reason of service-connected disability.

I

Appellant Lionel Guerra served on active duty in the United States Marine Corps from 1966 to 1968 and suffered service-connected injuries. Most of his injuries resulted from a single combat incident. The regional office awarded Mr. Guerra a 70% rating for an upper-extremity gunshot wound, a 70% rating for post-traumatic stress disorder, a 40% rating for injuries to his left leg and thigh, a 40% rating for injuries to his right leg and thigh, and a 30% rating for neuropathy. None of his disabilities is individually rated at 100%, but his individually rated disabilities combine to a rating of 100%, i.e., total disability. His rating of total disability is not based on TDIU, however.

The Veterans Court held that Mr. Guerra did not meet the threshold requirement for special monthly compensation under subsection 1114(s) because none of his disabilities is independently rated as total. In construing the statute, the court followed its earlier decision in *Bradley v. Peake*, 22 Vet. App. 280, 289-90 (2008), in which the court held that a veteran with a schedular

rating of total disability must have a single disability rated at 100% in order to qualify for benefits under subsection 1114(s).[1] The court rejected the argument that a veteran is entitled to benefits under subsection 1114(s) if the veteran suffers from several disabilities, no one of which is rated at 100%, even if the veteran's combined disability rating is 100%.

Mr. Guerra appeals, contending that benefits under subsection 1114(s) should be available to veterans who are rated as totally disabled, regardless of whether the veteran has a single disability rated at 100% or a combined rating of 100% based on multiple disabilities, no one of which is rated at 100%.

## II

The relevant portion of subsection 1114(s) states that a veteran is to receive special monthly compensation under the following conditions:

> If the veteran has a service-connected disability rated as total, and

> (1) has additional service-connected disability or disabilities independently ratable at 60 percent or more, or,

---

[1]    The Veterans Court in *Bradley* held that a veteran with a TDIU rating could qualify for compensation at the subsection 1114(s) rate, but only if the TDIU rating was based on a single disability. 22 Vet. App. at 293. Because Mr. Guerra's disability rating is not based on TDIU, we do not address whether and in what circumstances the benefits of subsection 1114(s) are available to a veteran with a TDIU rating.

(2) by reason of such veteran's service-connected disability or disabilities, is permanently housebound[.]

The statute requires "a service-connected disability rated as total." The use of the term "a service-connected disability" suggests, as the Veterans Court held, that the veteran must have at least one disability that is rated at 100%. While the use of the singular is not by itself dispositive, the language of subsection 1114(s) and the other statutory compensation provisions supports the interpretation adopted by the Veterans Court.

Among the seven special monthly compensation provisions in section 1114, the use of the singular indefinite article in referring to a disability ("a service-connected disability") is unique to subsection (s). The first of the special monthly compensation provisions, subsection 1114(k), states that a veteran is entitled to compensation "if the veteran, as the result of service-connected disability," has suffered the loss of one or more paired organs or has suffered any of several other listed conditions. The next four subsections, (l)-(o), contain the same introductory language, "as the result of service-connected disability." Subsection (p) provides heightened compensation when "the veteran's service-connected disabilities exceed the requirements for any of the rates prescribed in this section."

Even within subsection (s), the statute distinguishes between a single "disability" and multiple "disabilities." To receive benefits at the subsection (s) rate, in addition to having "a service-connected disability rated as total," the veteran must either be housebound by reason of the veteran's service-connected disability or have "additional service-connected disability or disabilities independently

ratable at 60 percent or more." Thus, the same sentence of the statute draws a distinction between a single disability and multiple disabilities. That distinction is a strong indication that Congress's use of the singular and plural terms was purposeful and that the reference to "a service-connected disability rated as total" was meant to refer to a single disability with a 100% rating. Accordingly, the statutory text evidences Congress's intent to limit the payment of special monthly compensation under subsection 1114(s) to a veteran who has at least one condition that has been rated as totally disabling.

While the language of subsection 1114(s) is not entirely free from ambiguity, we are compelled to defer to the DVA's interpretation of subsection 1114(s), and we uphold the decision of the Veterans Court on that ground. By regulation, the DVA has interpreted subsection 1114(s) to provide that in order to qualify for benefits under that statute, the veteran must have a single disability rated at 100%. That interpretation is entitled to deference under the principles of *Chevron U.S.A. Inc. v. Natural Resource Defense Council, Inc.*, 467 U.S. 837, 842-43 (1984). As applied in this setting, the rule of *Chevron* provides that when an agency "has statutory authority to issue regulations [and] invokes its authority to issue regulations, which then interpret ambiguous statutory terms, the courts defer to its reasonable interpretations." *Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 395 (2008); *see Haas v. Peake*, 525 F.3d 1168, 1195 (Fed. Cir. 2008).

The DVA's regulation corresponding to subsection 1114(s) was promulgated under the Secretary's authority "to prescribe all rules and regulations which are necessary or appropriate to carry out the laws administered by the Department," 38 U.S.C. § 501(a). It provides as follows: "The special monthly compensation provided by

38 U.S.C. 1114(s) is payable where the veteran has a single service-connected disability rated as 100 percent . . . .” 38 C.F.R. § 3.350(i). That portion of the regulation has been in effect since 1962. Special Monthly Compensation Ratings, 27 Fed. Reg. 4739 (May 18, 1962). The regulation’s reference to a “single service-connected disability rated as 100 percent” resolves any latent ambiguity in the statutory language and makes it clear that subsection 1114(s) benefits are available only if the veteran has a single disability that is rated at 100%. Thus, under the regulation, subsection 1114(s) benefits are not available to a veteran such as Mr. Guerra, whose 100% disability rating is based on multiple disabilities, no one of which is rated at 100%.

Mr. Guerra argues that the DVA has interpreted its own regulation to allow certain combined ratings to satisfy the definition of “single” and thus the statutory “total” standard. In making that argument, he relies on a reference to the TDIU rules that was previously contained in the DVA’s Adjudication Procedure Manual M21-1 (“Manual”) but was removed more than 15 years ago. The version of the Manual that was in effect between 1965 and 1995 directed the reader to the rules pertaining to TDIU for a definition of the term “single disability” for purposes of subsection 1114(s). The pertinent TDIU rule provided (as it still does) that, for purposes of TDIU determinations, “one disability” includes multiple disabilities resulting from a single accident and multiple disabilities affecting a single bodily system. 38 C.F.R. § 4.16(a). In 1995, however, before Mr. Guerra filed his claim for subsection 1114(s) benefits, the DVA deleted the reference to the TDIU rules from the portion of the Manual dealing with subsection 1114(s).

While acknowledging that the current version of the Manual does not support his position, Mr. Guerra argues that the deletion of the reference to the TDIU rules in 1995 constituted a "substantive rule" and that the agency was required to comply with the notice-and-comment rulemaking procedures of the Administrative Procedure Act ("APA") before making that change in the Manual. Because the DVA did not follow those procedures, Mr. Guerra argues that the change in the Manual is inoperative and that we must defer to the agency's pre-1995 construction of the term "single" in the statute and the corresponding regulation.

There is no force to Mr. Guerra's contention, for two reasons. To begin with, the premise of Mr. Guerra's argument—that the pre-1995 version of the Manual demonstrates that the DVA interpreted the phrase "a service-connected disability rated as total" as he does—is contrary to a more formal and explicit statement of the agency's position in the form of a precedential opinion of the agency's general counsel issued in 1991. In that opinion, the agency interpreted the statute and its own regulation to provide that the "threshold requirement for entitlement under 38 U.S.C. § 1114(s) is 'a' disability rated as total. If a veteran does not have a single service-connected disability rated as total (100 percent), he cannot be eligible for compensation at the 38 U.S.C. § 1114(s) rate." VA Op. Gen. Counsel Prec. 66-91 (Aug. 15, 1991). That formal expression of the agency's position, *see* 38 U.S.C. § 7104(c), clearly takes precedence over an inference drawn from a cross-reference found in a publication that the DVA has described as "an internal manual used to convey guidance to VA adjudicators [and] not intended to establish substantive rules beyond those contained in statutes and regulations." 72 Fed. Reg. 66,218, 66,210 (Nov. 27, 2007).

Moreover, neither the 1995 modification of the Manual nor the general counsel opinion that preceded it constituted or contained a substantive rule that was subject to the notice-and-comment requirements of the APA. A substantive rule represents an agency's exercise of the power delegated to it by Congress to "effect a change in existing law or policy or . . . affect individual rights and obligations." *Haas*, 525 F.3d at 1195. By contrast, an interpretive rule is one that is "issued by an agency to advise the public of the agency's construction of the statutes and rules which it administers." *Shalala v. Guernsey Mem'l Hosp.*, 514 U.S. 87, 99 (1995), quoting *Chrysler Corp. v. Brown*, 441 U.S. 281, 302 n.31 (1979). An interpretive rule thus "represents the agency's reading of statutes and rules rather than an attempt to make new law or modify existing law." *Haas*, 525 F.3d at 1195-96 (internal quotations omitted). If the rule in question "is an interpretation of a statute rather than an extra-statutory imposition of rights, duties or obligations, it remains interpretive even if the rule embodies the Secretary's changed interpretation of the statute." *White v. Shalala*, 7 F.3d 296, 304 (2d Cir. 1993), *cited with approval in Nat'l Org. of Veterans' Advocates v. Sec'y of Veterans Affairs*, 260 F.3d 1365, 1376 (Fed. Cir. 2001). The 1991 general counsel opinion explains that the statute and the agency's regulation require that a veteran have a single service-connected disability rated as total. As such, the general counsel opinion "represents the agency's reading of statutes and rules rather than an attempt to make new law or modify existing law." *Splane v. West*, 216 F.3d 1058, 1063 (Fed. Cir. 2000). Likewise, the 1995 modification of the Manual simply conforms the guidance given to VA adjudicators to accord with the agency's position set forth in its regulation, as interpreted in the 1991 general counsel opinion. Thus, neither is

invalid for failure to comply with the APA's notice-and-comment rulemaking requirements.[2]

The dissent suggests that any ambiguity in subsection 1114(s) should be resolved in favor of the veteran instead of by reference to the DVA's interpretation of a statute that it has been entrusted to administer. In *Sears v. Principi*, however, we rejected the argument that the pro-veteran canon of construction overrides the deference due to the DVA's reasonable interpretation of an ambiguous statute. 349 F.3d 1326, 1331-32 (Fed. Cir. 2003) ("Where, as here, a statute is ambiguous and the administering agency has issued a reasonable gap-filling or ambiguity-resolving regulation, we must uphold that regulation."); *see also Haas*, 544 F.3d at 1308; *Terry v. Principi*, 340 F.3d 1378, 1384 (Fed. Cir. 2003).

In sum, we conclude that subsection 1114(s) requires that a disabled veteran whose disability level is deter-

---

[2]     Of course, the question whether a particular provision is substantive or interpretive for purposes of the APA is not resolved simply by the title of the document in which the provision is found. If an agency announces new substantive rules, those rules are subject to the procedural requirements of 5 U.S.C. § 553 even if they are not formally published as agency regulations. The Veterans Court has in the past found that certain provisions of the Manual constituted substantive rules for purposes of the APA. *See, e.g., Earle v. Brown*, 6 Vet. App. 558, 562 (1994); *Hayes v. Brown*, 5 Vet. App. 60, 67 (1993); *Fugere v. Derwinski*, 1 Vet. App. 103 (1990), *aff'd*, 972 F.2d 331 (Fed. Cir. 1992). That was plainly not the case here, however, as the 1995 change in the Manual did not effect a substantive change in the agency's position as to the scope of entitlement to subsection 1114(s) benefits. *See Fournier v. Shinseki*, 23 Vet. App. 480, 487-88 (2010) (Manual provision is not a substantive rule if it does not "establish or alter the criteria for benefits").

mined by the ratings schedule must have at least one disability that is rated at 100% in order to qualify for the special monthly compensation provided by that statute. Because no one of Mr. Guerra's disabilities carries a disability rating of 100%, he is not eligible for that statutory benefit. We therefore affirm the decision of the Veterans Court.

No costs.

**AFFIRMED**

# United States Court of Appeals
# for the Federal Circuit

---

**LIONEL GUERRA,**

*Claimant-Appellant,*

v.

**ERIC K. SHINSEKI, SECRETARY OF VETERANS
AFFAIRS,**

*Respondent-Appellee.*

---

2010-7080

---

Appeal from the United States Court of Appeals for
Veterans Claims in case no. 08-223, Judge William A.
Moorman.

---

GAJARSA, *Circuit Judge*, dissenting

The majority makes two errors in its analysis of 38
U.S.C. § 1114(s), and therefore, I must respectfully dis-
sent. First, it fails to read § 1114(s) in the context of the
entire statute, as opposed to selected, segmented, individ-
ual portions. Majority Op. at 6-7. Second, the majority
improperly perceives ambiguity in § 1114(s) and thus
resorts to 38 C.F.R. § 3.350(i)—the regulation related to
§ 1114(s)—to support its conclusion that a veteran must
have a single disability rated at 100 percent in order to
qualify for compensation under that section. *Id.* at 7-8.
In so doing, the majority also ignores the canon of statu-

tory construction that requires ambiguities, if any, in veterans' statutes to be resolved in favor of the veteran. *See Brown v. Gardner*, 513 U.S. 115, 117-18 (1994). In my view, the plain language of the statute and the intent of Congress establishes that a veteran must simply have a total disability rating pursuant to § 1114(j) to qualify for special monthly compensation under § 1114(s).

Section 1114(s) states, in relevant part, that "[i]f the veteran has *a service-connected disability rated as total*, and (1) has additional service-connected disability or disabilities independently ratable at 60 percent or more, or, (2) by reason of such veteran's service-connected disability or disabilities, is permanently housebound, then the monthly compensation shall be $2,993." (Emphasis added). In its limited analysis of the plain language, the majority asserts that the singular indefinite article "a" before "service connected disability" and the use of both the singular "disability" and the plural "disabilities" demonstrates that § 1114(s) requires that a single disability be rated as total. Majority Op. at 6.

A review of § 1114 in its entirety, however, mandates a different result. Compensation awarded under Section 1114 is either regular compensation, (a)-(j), or special monthly compensation, (k)-(p) and (r)-(s). Sections 1114(a)-(j) provide the amount of monthly compensation "if and while *the disability* is rated" at a certain percentage, which is provided in increments of ten. (Emphasis added). Specifically, § 1114(j) provides the monthly compensation rate "if and while *the disability is rated as total*." (Emphasis added). Although §§ 1114(a)-(j) refer to "the disability" in the singular, a veteran's multiple service-connected disabilities can be combined to give the veteran a singular rating for compensation under those sections. *See* 38 C.F.R. § 4.25. A veteran who qualifies

for compensation under § 1114(j) can obtain a total rating based on the combination of multiple disabilities.

The key language in § 1114(s) that says "*a* service connected *disability rated as total*" tracks almost identically to the language in 38 U.S.C. § 1114(j) that says "if and while *the disability is rated as total*." Because the language in these provisions is nearly identical, it should be construed to have the same meaning. *See IBP, Inc. v. Alvarez*, 546 U.S. 21, 34 (2005) (noting "the normal rule of statutory interpretation that identical words used in different parts of the same statute are generally presumed to have the same meaning." (citation omitted)). Veterans entitled to monthly compensation under § 1114(j) can obtain a total rating by combining their disabilities into a single rating pursuant to 38 C.F.R. § 4.25. Having a total rating is a prerequisite to obtaining special monthly compensation under § 1114(s). *See Guillory v. Shinseki*, 603 F.3d 981, 983 (Fed. Cir. 2010) (explaining that "[e]xtraordinarily disabled veterans already receiving a 100% disability rating under section 1114(j) ('total disability') may also be eligible to receive an additional award for 'special monthly compensation' . . ., over and above the monthly amount for total disability." (citation omitted)). The language of § 1114(s) does not preclude a veteran from relying on a combined disability rating total to form the basis of his claim for compensation under that section.

Furthermore, the legislative history of section 1114(s) demonstrates that the very purpose of the section was to provide additional benefits to those veterans who were totally disabled under section 1114(j) but had additional, severe disabilities. It states that "[t]he current total disability rating [under subsection (j)] is $225 monthly" and "[t]his new rate [in subsection (s)] is an intermediate rate and applies to a veteran who is totally disabled . . . ."

*See* Special Compensation Rate for Housebound Service-Connected Disabled Veterans, H.R. Rep. No. 86-723 at 1 (1959); *see also* Special Compensation Rate for Housebound Service-Connected Disabled Veterans, H.R. Rep. No. 86-723 at 2 (1959) (noting that although "a wartime totally disabled veteran is entitled to basic compensation of $225 per month[, t]here is no intermediate rate . . . for the veteran who is totally disabled . . . and whose activities are greatly restricted, but who is not permanently bedridden . . . ."); *see also* 86 Cong. Rec. 11,931 (1960) (statement of Rep. Rogers); *id.* at 15,434 (statement of Sen. Johnson).  Thus, the legislative history supports the plain language of the statute: for a veteran to be entitled to compensation under § 1114(s), the veteran must qualify for total disability under § 1114(j).  Section 1114(s) was an "intermediate" benefit for those veterans who were more seriously injured than those having only a total disability but not requiring constant care.  *See* H.R. Rep. No. 86-723 at 1.

The majority also claims that §§ 1114(k)-(p) support its reading of the statute.  Sections 1114(k)-(o) provide special monthly compensation for veterans who, "as the result of *service-connected disability*," have suffered certain other injuries. (Emphasis added).  Section 1114(p) provides that "in the event the veteran's *service-connected disabilities* exceed the requirements for any of the rates provided in this section," the Secretary may award additional compensation. (Emphasis added).  The majority relies on the lack of "a" before service-connected disability in these sections to support its contention that the use of the word "a" in § 1114(s) means that the veteran must have a single disability rated as total to qualify for compensation under that section. Majority Op. at 6.

Contrary to the majority's view, § 1114(k) does not require that a veteran suffer multiple disabilities to receive compensation. Section 1114(k) states:

> if the veteran, as the result of service-connected disability, has suffered the anatomical loss or loss of use of *one or more* creative organs, or *one foot*, or *one hand*, or both buttocks, or blindness of *one eye*, having only light perception, has suffered complete organic aphonia with constant inability to communicate by speech, or deafness of both ears, having absence of air and bone conduction, or, in the case of a woman veteran, has suffered the anatomical loss of 25 percent or more of tissue from *a single breast* or both breasts in combination (including loss by mastectomy or partial mastectomy) or has received radiation treatment of breast tissue, the rate of compensation therefor shall be $96 per month for each such loss or loss of use independent of any other compensation provided in subsections (a) through (j) or subsection (s) of this section . . . .

38 U.S.C. § 1114(k) (emphases added). Section 1114(k) clearly provides compensation in the event a veteran has a single disability, such as the loss of *one* foot or *one* hand, without the use of the article "a". The lack of the article "a" does not mean that any compensation awarded under § 1114(k) must be for multiple disabilities. Indeed, the only limitation on the number of disabilities a veteran must have to qualify for compensation appears in § 1114(p), which uses the plural "disabilities." Clearly, to obtain compensation under that section, a veteran must have two or more "disabilities." The other sections in § 1114 do not have such a limitation.

The majority also claims that the distinction in § 1114(s) between "an additional service connected *disability* or *disabilities*" demonstrates that the use of the singular disability in the beginning of § 1114(s) means that one of the veteran's disabilities must be rated as total. The use of the singular and plural of disability does not have the meaning that the majority ascribes to it. The most natural reading of this language is that a veteran may have one or more disabilities that are each independently ratable at 70 percent to qualify for compensation under § 1114(s). The inclusion of "disabilities" demonstrates that a veteran having two disabilities, each independently rated at 70 percent, is not excluded from special monthly compensation under this section simply because he has more than one severe injury.

Therefore, based on the plain language of the statute, for a veteran to qualify for SMC under section 1114(s), the veteran must have a total disability rating pursuant to section 1114(j). Because, in my view, the language of § 1114(s) is clear, it is unnecessary to rely on the related regulation. *See Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984) ("If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." (footnote omitted)). To the extent that any ambiguity does exist in § 1114(s)—as the majority suggests—it should be resolved in favor of the veteran. *Gardner*, 513 U.S. at 117-18 (explaining that "interpretive doubt is to be resolved in the veteran's favor"); *see also King v. St. Vincent's Hosp.*, 502 U.S. 215, 221 (1991) ("[P]rovisions for benefits to members of the Armed Services are to be construed in the beneficiaries' favor." (citing *Fishgold v. Sullivan Drydock & Repair Corp.*, 328 U.S. 275, 285 (1946))).

In this case, the Board determined that Mr. Guerra "has a combined 100 percent disability evaluation," and he thus would qualify as having "a service-connected disability rated as total" for purposes of section 1114(s). The Board's finding, however, did not specify whether Mr. Guerra would be entitled to this rating if his 70 percent rating for PTSD were counted separately. I would remand this case to determine whether Mr. Guerra would have a combined 100 percent disability rating excluding the 70 percent rating for PTSD. Because the majority has not so resolved this case, I dissent.