# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 18-0378

MICHAEL L. YOUNGBLOOD, APPELLANT,

V.

ROBERT L. WILKIE,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Decided:  September 12, 2019)

*David J. Lowenstein*, of Richmond, Virginia, was on the brief for the appellant.

*Catherine C. Mitrano*, Acting General Counsel; *Mary Ann Flynn*, Chief Counsel; *Selket N. Cottle*, Deputy Chief Counsel; and *Sarah W. Fusina*, all of Washington, D.C., were on the brief for the appellee.

Before PIETSCH, BARTLEY, and MEREDITH, *Judges.*

PIETSCH, *Judge*: The appellant, Michael L. Youngblood, appeals through counsel a December 6, 2017, Board of Veterans' Appeals (Board) decision in which the Board denied him entitlement to an effective date prior to September 4, 2012, for special monthly compensation (SMC) at the housebound level.  Record (R.) at 2-6.  This appeal is timely and the Court has jurisdiction over the matter on appeal pursuant to 38 U.S.C. §§ 7252(a) and 7266.  On April 8, 2019, the Court formed a panel to determine whether multiple service-connected disorders that are defined as "one disability" under 38 C.F.R. § 4.16(a) may serve as "a service-connected disability rated as total" for the purpose of establishing eligibility for benefits under 38 U.S.C. § 1114(s). For the reasons that follow, the Court will affirm the Board's decision.

## I. BACKGROUND

The appellant served on active duty in the U.S. Army from September 1971 until September 1974.  R. at 5772.  By August 2001, he was entitled to receive disability benefits for the residual effects of a left knee surgery and degenerative joint disease in his right knee.  R. at 3520.  His combined disability rating was 70%.  *Id.*  In July 2002, the VA regional office (RO) granted him entitlement to a total disability rating based on individual unemployability (TDIU)

effective July 31, 2001. R. at 3295-97. At the time, his service-connected left and right knee disabilities were rated 60% and 20% disabling respectively, and his combined disability rating was 80%. R. at 3293.

The RO granted the appellant entitlement to disability benefits for renal insufficiency and polycystic kidney disease in November 2003 and ultimately assigned his disorder a 60% disability rating for the period beginning on January 22, 1999, an 80% disability rating for the period from March 10, 2004, until September 3, 2012, and a 100% disability rating after that date. R. at 894-901, 1408-14. On September 25, 2012, the RO granted him entitlement to SMC "based on housebound criteria" effective September 4, 2012, the "date of increased evaluation in your service[-]connected polycystic kidney disease." R. at 1408-14. He challenged the effective date assigned to that benefit, and his case eventually reached the Court.

In March 2017, the parties filed a joint motion to vacate the Board's decision and remand the matter on appeal for the Board to discuss evidence suggesting that the appellant "may have met the criteria for entitlement to SMC . . . as early as July 31, 2001." R. at 182-85. On March 28, 2017, the Court granted the parties' motion. R. at 186.

On December 6, 2017, the Board issued the decision presently under review. R. at 2-6.

## II. ANALYSIS

### A. Applicable Law and Question Presented

The appellant seeks an earlier effective date for SMC benefits that arise under 38 U.S.C. § 1114(s). Pursuant to that provision,

> [i]f the veteran has a service-connected disability rated as total, and (1) has additional service-connected disability or disabilities independently ratable at 60 percent or more, or, (2) by reason of such veteran's service-connected disability or disabilities, is permanently housebound, then the monthly compensation shall be $2,993. For the purpose of this subsection, the requirement of "permanently housebound" will be considered to have been met when the veteran is substantially confined to such veteran's house (ward or clinical areas, if institutionalized) or immediate premises due to a service-connected disability or disabilities which it is reasonably certain will remain throughout such veteran's lifetime.

38 U.S.C. § 1114(s).

The only part of section 1114(s) at issue in this case is the opening clause. VA concluded that on September 4, 2012, the appellant became eligible for section 1114(s) benefits because the

2

RO assigned a 100% disability rating to his polycystic kidney disease effective on that date, causing it to become "a service-connected disability rated as total." 38 U.S.C. § 1114(s); R. at 1409. The appellant believes that he became eligible for section 1114(s) benefits on July 31, 2001, because the TDIU award that became effective on that date also is "a service-connected disability rated as total." The Secretary does not dispute the appellant's assertion that he met the other criteria for section 1114(s) benefits in July 2001. If, therefore, the appellant's argument is correct, then he will be entitled to receive the effective date that he requests.

The parties do not question the general meaning of the phrase "a service-connected disability rated as total." They agree that it means one single disability to which the agency has assigned a 100% disability rating. *See* VA Gen. Coun. Prec. 66-91 (Aug. 15, 1991); *Guerra v. Shinseki*, 642 F.3d 1046, 1049-50 (Fed. Cir. 2011). Multiple, separately rated disorders do not suffice, even if the combined disability rating of those disorders reaches 100%. *Bradley v. Peake*, 22 Vet.App. 280, 290-91 (2008). The appellant does not dispute that he was not entitled to a 100% schedular disability rating for a single service-connected disability during the period under consideration.

The appellant directs the Court to the regulation that sets the standard for schedular TDIU eligibility. Pursuant to that regulation,

> [t]otal disability ratings for compensation may be assigned, where the schedular rating is less than total, when the disabled person is, in the judgment of the rating agency, unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities: *Provided that*, if there is only one such disability, this disability shall be ratable at 60 percent or more, and that, if there are two or more disabilities, there shall be at least one disability ratable at 40 percent or more, and sufficient additional disability to bring the combined rating to 70 percent or more. For the above purpose of one 60 percent disability, or one 40 percent disability in combination, the following will be considered as one disability: (1) Disabilities of one or both upper extremities, or of one or both lower extremities, including the bilateral factor, if applicable, (2) disabilities resulting from common etiology or a single accident, (3) disabilities affecting a single body system, e.g. orthopedic, digestive, respiratory, cardiovascular-renal, neuropsychiatric, (4) multiple injuries incurred in action, or (5) multiple disabilities incurred as a prisoner of war.

38 C.F.R. § 4.16(a) (2019).

The parties agree that caselaw plainly states that TDIU based on a single service-connected disorder is sufficient to meet the "a service-connected disability rated as total" requirement in

3

section 1114(s) even if VA assigned that disorder a schedular disability rating less than 100%. *See Bradley*, 22 Vet.App. at 293 (holding that "section 1114(s) does not limit 'a service-connected disability rated as total' to only a schedular rating of 100%, and the Secretary's current regulation permits a TDIU rating based on a single disability to satisfy the statutory requirement of a total rating").

As the Board noted and the parties do not question, however, the RO based the appellant's TDIU award on the following service-connected disorders: total left knee arthroplasty with history of degenerative joint disease, status post surgical procedures of the left knee, and degenerative joint disease of the right knee. R. at 4; *see* R. at 3520. Consequently, the appellant's TDIU eligibility is based on three disorders, two too many for him to benefit from section 1114(s) under the law as it presently exists. *See Buie v. Shinseki*, 24 Vet.App. 242, 250 (2010) (per curiam) (holding that TDIU "based on multiple underlying disabilities cannot satisfy the section 1114(s) requirement of 'a service-connected disability' because that requirement must be met by a single disability").

The appellant, however, wishes to take advantage of what we will refer to as the "one disability" clause in § 4.16(a). The Secretary concedes that the disabilities that the RO determined caused the appellant to be eligible for TDIU may count as "one disability" as that term is defined in § 4.16(a). Based on the parties' concessions and the development of the law to this point, the discrete legal question raised by this case and the only one that the Court will address is whether "one disability" in § 4.16(a) created from multiple service-connected disorders is sufficient to serve as "a service-connected disability rated as total" for the purposes of establishing eligibility for section 1114(s) benefits.[1] We conclude that it is not.

B. Analysis

As always, the Court interprets statutes and regulations de novo and begins by determining whether the plain meaning of the codified terms written by Congress and the Secretary is discernable. 38 U.S.C. § 7261(a)(1); *Petitti v. McDonald*, 27 Vet.App. 415, 422 (2015). If the meaning of the regulatory phrase at issue is clear, the Court need not proceed past the plain meaning inquiry. *Ravin v. Wilkie*, 30 Vet.App. 310, 313 (2018) ("[I]f the Court is able to discern

---

[1] In *Bradley*, the Court made clear that the § 4.16(a) command to "treat multiple disabilities" caused by the same incident "as one is specifically applicable only to TDIU ratings" and does not apply when a veteran seeks to combine separately rated disorders to obtain SMC outside of the TDIU context. 22 Vet.App. at 290-91. That decision, however, left open the question presently before us.

the plain meaning of the regulations in question, then its work is done and that meaning controls.") (citing *Atencio v. O'Rourke*, 30 Vet.App. 74, 82 (2018)).

As the Court has thoroughly documented on numerous occasions, there are two paths to TDIU. Section 4.16(a) allows agency adjudicators to decide TDIU immediately without further input from other agency officials, but that provision only applies if stated requirements are met. If a veteran seeking TDIU fails to meet those requirements, then § 4.16(b) comes into play. Under that provision, adjudicators may not grant TDIU without first obtaining input from an appropriate agency official. 38 C.F.R. § 4.16(b); *see Pederson v. McDonald*, 27 Vet.App. 276, 285-86 (2015) (en banc).

Section 4.16(a) operates only if the veteran's assigned disability ratings reach certain baseline thresholds, namely a single disability ratable at 60% or one ratable at 40% combined with one or more others to reach a combined disability rating of 70%. Once again, the phrase at issue in this case reads: "For the above purpose of one 60 percent disability, or one 40 percent disability in combination, the following will be considered as one disability[.]" 38 C.F.R. § 4.16(a).

No digging is required to unearth the Secretary's reason for creating the "one disability" clause in § 4.16(a)–the Secretary wrote it right into the regulation. The phrase "[f]or the above purpose" and its referent plainly convey that the Secretary created the "one disability" clause for the singular purpose of providing a mechanism to assist certain veterans in meeting the threshold schedular disability rating requirements for § 4.16(a) adjudication of their TDIU requests. Just as the regulation says, assignment of the "one disability" label confers on the claimant the right to combine the disability ratings assigned to his or her service-connected disorders and apply that combined rating toward meeting the threshold requirements of § 4.16(a). *See Moody v. Wilkie*, 30 Vet.App. 329, 339 (2018) (per curiam) (holding that disability ratings assigned to disorders falling under the "one disability" clause are aggregated using the combined ratings table).

We conclude that, because the Secretary plainly stated that the purpose of the "one disability" phrase was to assist certain veterans in reaching the baseline disability rating requirements to benefit from § 4.16(a), then no other purpose can be read into the regulation, including retaining the "one disability" designation to establish "a service-connected disability rated as total" for SMC eligibility. The unambiguous specificity of the Secretary's purpose clause is decisive and excludes all uses for the phrase "one disability" as it appears in § 4.16(a) other than the one provided. *Holle v. McDonald*, 28 Vet.App. 112, 117 (2016) (applying, as the Court often

has, the maxim *expressio unius est exclusio alterius*). The Court is aware of no other statute or regulation or clear regulatory history that counteracts the effect of that interpretation, and the appellant has directed us to none. Congress certainly did not address the matter, and the Secretary's regulation includes no cross reference to section 1114(s) or its implementing regulation and no other indication that he intended the "one disability" clause to be used for any purpose other than the one stated.[2]

The appellant sees the "one disability" clause differently. In the appellant's view, application of that clause means that his service-connected disorders "are to be considered one disability for purposes of TDIU" and that he was "entitled to TDIU based on his single service-connected disability." Appellant's Brief at 5-6. That adds more breadth to the regulation than its plain meaning can bear. Once again, by its own terms, the "one disability" clause exists to determine whether a claimant's TDIU request is eligible to be directly adjudicated under § 4.16(a) rather than under the extraschedular format found in § 4.16(b). Deciding whether to aggregate disability ratings is the one and only purpose of considering disorders to be "one disability" in § 4.16(a). *See Moody*, 30 Vet.App. at 339. Once eligibility for § 4.16(a) adjudication is established, the "one disability" clause serves no further purpose and adjudication of TDIU continues in the usual manner. The "one disability" clause is a mechanism for tabulating disability ratings for certain service-connected disorders, nothing more. *See id.*

Applied to this case, that means that, although the RO could have deemed the appellant's bilateral lower extremity disabilities "one disability" to help him establish entitlement to proceed under § 4.16(a), once the RO reached the adjudication phase of the appellant's TDIU request, the "one disability" phrase had served its purpose and faded from view.[3] As the Board noted, the RO

---

[2] We are mindful that a prior version of VA's *Adjudication Procedures Manual* (M21-1) referred to the "one disability" clause for purposes of 38 U.S.C. § 1114(s). *See Guerra*, 642 F.3d at 1050 (discussing the M21-1 provision in effect from 1965 to 1995). However, as the United States Court of Appeals for the Federal Circuit noted in *Guerra*, the earlier M21-1 provision was contrary to the "more formal and explicit statement of the agency's position" in a 1991 general counsel precedential opinion and "[t]hat formal expression of the agency's position, *see* 38 U.S.C. § 7104(c), clearly takes precedence over an inference drawn from a cross-reference found in" VA's internal manual. *Id.* at 1050-51.

[3] Although the Secretary maintains that the appellant's left knee disability was rated 60% and, therefore, he did not need to rely on the "one disability" clause to proceed under § 4.16(a), the Court need not address the implications of that observation because it is the appellant's broader assertion—that his multiple disabilities may be considered as "one" for purposes of the *award* of TDIU—that we hold against.

based its 2001 TDIU award on the combined occupational effects of three service-connected disorders. R. at 4; *see* R. at 3297. We conclude, therefore that the Board did not err in finding that the appellant was not eligible for section 1114(s) benefits prior to 2012.[4] R. at 6; *see Buie*, 24 Vet.App. at 250.

The appellant has made no other arguments that convince us to rethink that conclusion. He has not, other than proffering his broad reading of the phrase "one disability," pointed us toward anything that suggests that the Secretary contemplated a purpose other than the one that he stated explicitly and clearly. Furthermore, the appellant states his view of the meaning and effect of the phrase at issue in this case as though it is established in law and does not engage in any discernable interpretive analysis. *See Hilkert v. West*, 12 Vet.App. 145, 151 (1999) (en banc) (holding that the appellant bears the burden of demonstrating error on appeal), *aff'd per curiam*, 232 F.3d 908 (Fed. Cir. 2000).

The appellant also directs the Court to the joint motion that the parties filed the last time the case was here. In that motion, the Secretary conceded that the Board had not supported its August 2016 decision with an adequate statement of reasons or bases. The Secretary also "agree[d] that th[e] evidence suggests that [the a]ppellant may have met the criteria for entitlement to SMC at the [1114(s)] rate as early as July 31, 2001." R. at 183. The appellant concludes that "[i]nterestingly, the Secretary now takes a position contrary to what was articulated in the previous motion." Reply Brief at 3.

The appellant does not acknowledge the remainder of the Secretary's joint motion concessions. The Secretary concluded that the Board's decision "hinders judicial review" because the Board "failed to consider the above evidence and discuss whether entitlement to SMC was accordingly warranted at a date earlier than September 4, 2012." R. at 183-84. The Board considered the cited evidence and arguments raised by the joint motion and provided a statement of reasons or bases addressing whether the features of the appellant's TDIU award establish

---

[4] The appellant did not argue, and we therefore take no position concerning, whether, pursuant to VA's duty to maximize benefits, the record reasonably raised the question whether the appellant's left knee disability alone, rated at 60% disabling, was sufficient to warrant entitlement to TDIU and thus could have served as a single disability sufficient to meet the criteria for SMC. *See Bradley*, 22 Vet.App. at 293-94 (concluding that, because the appellant was potentially entitled to SMC, the Secretary should have assessed whether "Mr. Bradley's [post-traumatic stress disorder (PTSD)] is sufficient, on its own, to warrant a TDIU rating"); *see also Buie*, 24 Vet.App. at 245-46 (holding that, in light of VA's duty to maximize benefits, the order in which disabilities are service connected is not relevant to a claimant's eligibility for SMC; thus, for the purpose of determining SMC eligibility, remand was warranted for VA to consider whether the appellant's PTSD alone would be sufficient to entitle him to TDIU).

entitlement to SMC prior to September 2012. The appellant does not sufficiently explain his assertion that the Secretary's concessions required the Board to do more. *See Forcier v. Nicholson*, 19 Vet.App. 414, 426 (2006) (providing that it is the parties' responsibility to "enumerate[ ] clear and specific instructions to the Board" in the drafting of a joint motion for remand), *aff'd per curiam*, 221 F. App'x 996 (Fed. Cir. 2007).

At the time of the joint motion, no precedent addressed the matter raised by this case. The Secretary did not have a Board decision about that issue to form a properly presented argument before the Court. He could not, as a matter of law, say that the appellant's argument was incorrect, and he prudently allowed the appellant to seek a Board decision that would place the Court in a position to reach a precedential outcome. Further, the appellant does not address the equivocality of the words "suggests" and "may have" that the parties used in the joint motion, which clearly convey that the Secretary did not intend to limit the Board's analysis on remand. Accordingly, the Court discerns no error in the Board's decision to reject the argument raised in the joint motion without concluding that the joint motion required it to circumscribe its analysis or do anything other than respond to the appellant's argument.

Finally, the appellant makes the above-quoted assertion about the joint motion, but then does nothing to explain why it is noteworthy or how it should affect the outcome of this case. He cites none of the caselaw explaining how the Court should interpret a joint motion when it becomes an issue in later litigation. The Court, therefore, need not give his arguments any more consideration than it already has. *See Hilkert*, 12 Vet.App. at 151.

Any errors made by the Board in its analysis are harmless. *See* 38 U.S.C. § 7261(b)(2); *Shinseki v. Sanders*, 556 U.S. 396, 406 (2009). The appellant has raised no other arguments with the specificity necessary for them to receive full consideration. *See Locklear v. Nicholson*, 20 Vet.App. 410, 416 (2006). The Board's decision will be affirmed.

### III. CONCLUSION

After consideration of the parties' briefs and the record, the Board's December 6, 2017, decision is AFFIRMED.