# United States Court of Appeals for the Federal Circuit

---

**MARCUS W. O'BRYAN,**
*Claimant-Appellant,*

**v.**

**ROBERT A. MCDONALD,**
**Secretary of Veterans Affairs,**
*Respondent-Appellee.*

---

2014-7027

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 11-2584, Judge Lawrence B. Hagel.

---

Decided: November 20, 2014

---

KENNETH M. CARPENTER, Law Office of Carpenter Chartered, of Topeka, Kansas, argued for claimant-appellant. On the brief was THEODORE C. JARVI, Law Offices of Theodore C. Jarvi, of Tempe, Arizona.

TANYA B. KOENIG, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent-appellee. With her on the brief were STUART F. DELERY,

Assistant Attorney General, ROBERT E. KIRSCHMAN, JR., Director, and SCOTT D. AUSTIN, Assistant Director. Of counsel on the brief were DAVID J. BARRANS, Deputy Assistant General Counsel, and LARA K. EILHARDT, Staff Attorney, United States Department of Veterans Affairs, of Washington, DC.

———————————

Before PROST, *Chief Judge,* CLEVENGER, and DYK, *Circuit Judges.*

DYK, *Circuit Judge.*

Marcus W. O'Bryan ("O'Bryan") appeals from a decision of the United States Court of Appeals for Veterans Claims ("Veterans Court"). The Veterans Court affirmed a 2011 decision of the Board of Veterans' Appeals ("Board") that found no clear and unmistakable error ("CUE") in a 1980 Board decision to deny Mr. O'Bryan disability benefits based on Leber's optic atrophy ("Leber's"). *O'Bryan v. Shinseki*, No. 11-2584, 2013 WL 2631003, at *1 (Vet. App. June 12, 2013). Because the Veterans Court misinterpreted the law on when a congenital or developmental condition is a non-compensable defect, we vacate and remand for further consideration.

## BACKGROUND

This case involves a claim for disability benefits for Leber's optic atrophy, a hereditary condition characterized by progressive degeneration of the optic nerve. Mr. O'Bryan served in the United States Marine Corps from August 1973 to September 1976. There is no evidence that his eye problems were noted upon his entry into service. Upon discharge, he was listed as having 20/20 vision. In June 1977, he filed a claim for service-connected optic disease. In medical examinations around that time, he variously reported that his vision started to blur in 1974, September 1976, and November 1976. It is

undisputed that he was legally blind due to Leber's within one year of discharge. Under the regulations, certain conditions (allegedly including Leber's) manifesting within one year after discharge are treated as though manifested during service. *See* 38 C.F.R. §§ 3.307(a)(3), 3.309(a); *see also* 38 U.S.C. § 1112(a).

As discussed below, the statute, 38 U.S.C. § 1110, provides disability compensation for a "disease" incurred during or aggravated by service. Mr. O'Bryan argues that his symptoms began during service; that he is suffering from a "disease"; and that, because his condition was not noted upon entry, he is entitled to a presumption of soundness upon entry, that is, a presumption that the disease was incurred in service. 38 U.S.C. § 1111. He urges that the presumption was not rebutted by the Veteran's Administration ("VA") and that he was therefore entitled to compensation.

In one of the medical examinations Mr. O'Bryan underwent, a doctor reported that the diagnosis of Leber's "implies fixed, unchanging subnormal vision and has no known effective treatment." J.A. 31. In 1979, Mr. O'Bryan's claim was denied by the regional office of the VA because Leber's is not a "disease" but rather a "hereditary disorder" characterized by "bilateral progressive optic atrophy with onset usually [at] about the age of 20." J.A. 34. In 1980, the Board, citing 38 C.F.R. § 3.303(c), affirmed the denial, determining that genetically determined optic atrophy is not a "disease" within the statute "because such [a] disorder is congenital or developmental." J.A. 38–39.

In 2010, Mr. O'Bryan attempted to reopen the case, but the Board rejected his contention that it committed CUE in its 1980 decision. The Board concluded that since Leber's was a congenital or developmental defect and not a "disease," the veteran was not entitled to the presump-

tion of soundness in 38 U.S.C. § 1111, and there was no error. The Veterans Court affirmed. While the court recognized that Mr. O'Bryan's condition worsened over time, it explained that the Board did not err in concluding that Leber's is a congenital defect because the Board properly relied on the medical opinion stating that Leber's "implies a fixed, unchanging subnormal vision." J.A. 4 (quoting J.A. 31).

DISCUSSION

Under 38 U.S.C. § 7292, we have jurisdiction to review decisions of the Veterans Court on issues of law, though not on issues of fact or application of law to fact. *See Morris v. Shinseki*, 678 F.3d 1346, 1351 (Fed. Cir. 2012) (citing *Forshey v. Principi*, 284 F.3d 1335, 1338 (Fed. Cir. 2002) (en banc)). The legal issue here is whether the Veterans Court correctly construed "[c]ongenital or developmental defects" in 38 C.F.R. § 3.303(c).

I

Section 1110 of Title 38 provides compensation to veterans for disabilities "resulting from personal injury suffered or disease" incurred or aggravated during service. Congress has not defined "injury" or "disease." Congress left it up to the VA to "fill the gap left by the statute with respect to the question of what kinds of conditions qualify" as diseases. *Terry v. Principi*, 340 F.3d 1378, 1383 (Fed. Cir. 2003). Pursuant to its authority in 38 U.S.C. § 501 to prescribe rules and regulations, the VA promulgated 38 C.F.R. § 3.303(c), which provides: "Congenital or developmental defects, refractive error of the eye, personality disorders and mental deficiency as such are not diseases or injuries within the meaning of applicable legislation." As we recognized in *Morris*, *Terry* "upheld the validity of § 3.303(c) as consistent" with § 1110. 678 F.3d at 1353. The regulation's exclusions, which include "[c]ongenital or developmental defects" as

well as several other types of conditions, preclude a veteran from being compensated for service-connected disability under § 1110 for those conditions. *Id.* at 1353–54. However, we have not previously had occasion to consider what constitutes a "[c]ongenital or developmental defect."

Deference to an agency's interpretation of its own regulation is warranted when the regulation is ambiguous. *See Christensen v. Harris Cnty.*, 529 U.S. 576, 588 (2000). "An agency's interpretation of its own regulation is controlling unless that interpretation is plainly erroneous or inconsistent with the regulation." *Johnson v. McDonald*, 762 F.3d 1362, 1364 (Fed. Cir. 2014) (quoting *Thun v. Shinseki*, 572 F.3d 1366, 1369 (Fed. Cir. 2009)); *see also United States v. Cleveland Indians Baseball Co.*, 532 U.S. 200, 220 (2001); *Auer v. Robbins*, 519 U.S. 452, 461 (1997). "[S]trong deference is appropriate even when the agency's interpretation was announced without resort to formal steps," as long as the interpretation "reflects 'the agency's fair and considered judgment on the matter.'" *Thun*, 572 F.3d at 1369 (quoting *Auer*, 519 U.S. at 462–63).

The phrase "[c]ongenital or developmental defects" in § 3.303(c) is ambiguous. In resolving the ambiguity here, we benefit from guidance provided by two VA General Counsel opinions to which we afford deference.[1] In VA

---

[1]    *See Haas v. Peake*, 525 F.3d 1168, 1186–91 (Fed. Cir. 2008) (affording *Auer* deference to the VA's interpretation of a regulation, including statements in a General Counsel opinion); *see also Guerra v. Shinseki*, 642 F.3d 1046, 1050 (Fed. Cir. 2011) (consulting a precedential General Counsel opinion as a "formal expression" of the VA's position on a regulation and statute); *Thun*, 572 F.3d at 1370 (consulting a precedential General Counsel opinion for support of the VA's interpretation of a regulation);

General Counsel opinion 82-90, the General Counsel addressed the meaning of "[c]ongenital or developmental defects" under § 3.303(c). The General Counsel concluded that "defect" in § 3.303(c) could not mean *any* "imperfection, failure or absence" because that would remove all conditions from the scope of "disease" in 38 U.S.C. § 1110 (formerly § 310). VA Op. Gen. Couns. Prec. ("VAOPGCPREC") 82-90. The General Counsel explained that "defects" are "definable as structural or inherent abnormalities or conditions which are more or less stationary in nature." *Id.* The "essentially valid" contrast between "disease" under § 1110 and "defect" under § 3.303(c) is that the former is "capable of improving or deteriorating" and the latter is not. *Id.*

Another General Counsel opinion, 67-90, elaborates on this construction. There, in the context of accepting that "congenital or developmental defects are normally static conditions which are incapable of improvement or deterioration," the General Counsel explained that it is "clear" that "retinitis pigmentosa and most other diseases of hereditary origin can be incurred or aggravated in service, in the sense contemplated by Congress in title 38." VAOPGCPREC 67-90. Its focus was again on possible progression. The General Counsel noted that the relevant factual question is whether the condition is manifested in service, i.e., "[a]t what point the individual *starts* to manifest the symptoms" and whether the symptoms have "*progresse[d]* during service at a greater rate than normally expected according to accepted medical authority." *Id.* (emphases added). This suggests that the relevant legal question is whether the condition is *capable* of progression. We conclude here that this inter-

---

*Smith v. Nicholson*, 451 F.3d 1344, 1351 (Fed. Cir. 2006) (same).

pretation is not "plainly erroneous or inconsistent with the regulation." *Thun*, 572 F.3d at 1369 (quoting *Auer*, 519 U.S. at 461). In fact, the interpretation is reasonable. It makes sense for the VA to interpret "defect" in § 3.303(c) to exclude progressive hereditary conditions since the nature of hereditary progressions can be aggravated by service.

Thus, we agree that under the above General Counsel opinions, a congenital or developmental condition that is progressive in nature—that can worsen over time—is a disease rather than a defect. A progressive congenital or developmental condition does not become a defect simply because it ceases to progress. The Veteran's Court erred in failing to apply the correct legal standard. Applying the correct legal standard here, there is no dispute that Leber's is a disease.

The "disease" referenced in General Counsel opinion 67-90, retinitis pigmentosa, is illustrative. Retinitis pigmentosa is "frequently hereditary" and "marked by *progressive* loss of retinal response" and "retinal atrophy." *Dorland's Illustrated Medical Dictionary* 1634 (32nd ed. 2012) (emphasis added). Leber's hereditary optic atrophy is similar to retinitis pigmentosa. It is a "rare hereditary disorder" and "is characterized by degeneration of the optic nerve and papillomacular bundle, resulting in *progressive* loss of central vision and scotoma." *Id.* at 1269 (emphasis added). Presumably, retinitis pigmentosa can also "imply" fixed, subnormal vision, yet it is capable of deteriorating. The government suggested that Leber's and retinitis pigmentosa differ in the pattern and speed by which they progress. However, nothing in the General Counsel opinions provides that pattern or speed makes a legal difference. The correct legal question is whether Leber's is capable of progression. There is no dispute that it is.

II

The government appears to argue that following the General Counsel's interpretation would allow service connection and compensation under §§ 1110–11 for hereditary diseases that are untreatable and cannot be aggravated by service and are not in fact service-connected. We disagree.

First, the VA has the authority to change its regulations or the interpretation of its regulations if it so chooses. We do not decide that the General Counsel's interpretation of the regulation, or the regulation's interpretation of the statute, is a required one. We afford "broad deference" to such interpretations, even more so than an agency's construction of a statute. *Cathedral Candle Co. v. U.S. Int'l Trade Comm'n*, 400 F.3d 1352, 1363–64 (Fed. Cir. 2005).

Second, not all progressive conditions are diseases under the General Counsel's interpretation because not all progressive conditions fall under the category of congenital or developmental defects. In *Morris*, for example, we held that because personality disorder is an exclusion in § 3.303(c), a veteran with personality disorder is not entitled to the presumption of soundness in § 1111. 678 F.3d at 1354–55. Similarly, in *Terry*, we held that "refractive error of the eye" is not a compensable disease because it is specifically excluded from the regulation. 340 F.3d at 1383–84. Both personality disorders and refractive errors of the eye can "progress." Nevertheless, because § 3.303(c) lists them *in addition to* "[c]ongenital or developmental defects," they are also excluded as noncompensable. Moreover, not all hereditary conditions are diseases since not all hereditary conditions are progressive. Contrast Leber's, for instance, with the "congenital malformations" mentioned in § 3.303(c), the "congenital abnormality" version of bilateral flatfoot mentioned in 38

C.F.R. § 4.57, and the "absent, displaced or supernumerary parts" mentioned in 38 C.F.R. § 4.9. All of the latter are the kinds of congenital and stable conditions that are defects, not diseases.

Third, the consequence of treating Leber's as a disease and not a defect is that the veteran here is entitled to a presumption of soundness since the eye condition was not noted upon entry into service. In *Wagner v. Principi*, 370 F.3d 1089, 1096 (Fed. Cir. 2004), this court held that when a condition has not been noted upon entry, the presumption of soundness in § 1111 applies and the veteran's claim is one for service connection. The burden then falls on the government to rebut such a presumption "by clear and unmistakable evidence that the veteran's disability was both preexisting and not aggravated by service." *Id.* In cases of congenital, developmental, or hereditary conditions that qualify as diseases, the government rebuts the part of the presumption that the disease did not preexist service by showing that it is hereditary. For instance, by showing that Leber's is hereditary, the government would rebut that part of the presumption.

Fourth, to rebut the presumption of soundness in § 1111, the government must also prove there has been no aggravation during service. Just because a congenital or developmental disease can progress does not mean that it has progressed at a greater rate than normally expected according to accepted medical authority, i.e., that it was aggravated by service. As we explained in *Wagner*, the government may show no aggravation "by establishing that there was no increase in disability during service or that any increase in disability was due to the natural progress of the preexisting condition." 370 F.3d at 1096 (citation, internal quotation marks, and alteration omitted).

### III

In defining what constitutes a "[c]ongenital or developmental defect," the General Counsel opinions have interpreted defects to be "static conditions" that are "incapable" of "improvement or deterioration," whereas diseases are capable of such progression. VAOPGCPREC 67-90. We defer to their interpretation.

We do not decide whether the veteran is entitled to disability compensation. We simply remand for further proceedings applying the correct legal standard for "defect."

**VACATED AND REMANDED**

Costs to O'Bryan.