Citation Nr: 1518715 
Decision Date: 04/30/15 Archive Date: 05/05/15

DOCKET NO. 10-23 757 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in San Juan, the Commonwealth of Puerto Rico


THE ISSUES

1. Entitlement to service connection for agenesis of the corpus callosum, (ACC) claimed as brain tumor (lipoma).

2. Entitlement to service connection for a headache disorder.


REPRESENTATION

Veteran represented by: Robert V. Chisholm, Attorney


ATTORNEY FOR THE BOARD

Tracie N. Wesner, Associate Counsel


INTRODUCTION

The Veteran served on active duty from July 1971 July 1975.

This case is before the Board of Veterans' Appeals (Board) on appeal from a rating decision dated in March 2009 by a Regional Office (RO) of the Department of Veterans Affairs (VA). 

In a May 2014 decision, the Board denied the Veteran's claim of service connection for agenesis of the corpus callosum. The Veteran appealed to the U.S. Court of Appeals for Veterans Claims (Court), arguing that the issue of service connection for headaches on a direct basis was raised by the record and properly before the Board, but not adequately addressed in the May 2014 decision. In a November 2014 Order, the Court granted a Joint Motion for Remand (JMR), which vacated the May 2014 decision and remanded the issues to the Board for further development and readjudication in compliance with the directives specified. 

The Board finds that, for the reasons that follow, the record is sufficient to readjudicate the Veteran's claim of service connection for agenesis of the corpus callosum. Conversely, further development is needed to achieve substantial compliance with the CAVC remand directives concerning his headache claim. Consequently, that issue is addressed in the REMAND portion of the decision below and is REMANDED to the agency of original jurisdiction (AOJ) via the Appeals Management Center in Washington, DC.


FINDINGS OF FACT

1. The Veteran's agenesis of the corpus callosum is a congenital or developmental condition that remains static and does not progress, and it was not subjected to a superimposed disease or injury during military service that resulted in additional disability.

2. The Veteran's agenesis of the corpus callosum clearly and unmistakably preexisted service and clearly and unmistakably was not aggravated by service.


CONCLUSION OF LAW

The criteria for establishing entitlement to service connection for agenesis of the corpus callosum are not met. 38 U.S.C.A. §§ 1110, 1131 (West 2014); 38 C.F.R. §§ 3.303, 3.304 (2014).


REASONS AND BASES FOR FINDINGS AND CONCLUSION

I. VA's Duties to Notify and Assist

Under the Veterans Claims Assistance Act (VCAA), when VA receives a complete or substantially complete application for benefits, it must notify the claimant of the information and evidence not of record that is necessary to substantiate a claim, which information and evidence VA will obtain, and which information and evidence the claimant is expected to provide. 38 C.F.R. § 3.159 (2014); see also Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006). Such notice must advise that a disability rating and an effective date for the award of benefits will be assigned if there is a favorable disposition of the claim. Id.; 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5106, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.159, 3.326 (2014); see also Pelegrini v. Principi, 18 Vet. App. 112, 120-21 (2004). These duties were met by letter dated July 2008. 

VA also has a duty to assist the Veteran in the development of his claim. Relevant to the duty to assist, the Veteran's service treatment records (STRs), post-service treatment records and lay statements have been obtained and considered. The Veteran has not identified any additional, outstanding records that have not been requested or obtained. 

VA's duty to assist also requires it to provide a medical examination or opinion if one is necessary to decide the claim. 38 C.F.R. § 3.159(c)(4)(i). The Veteran was provided with a VA examination in March 2009, and a VA medical opinion was received in April 2014. The Board finds that the examination and subsequent opinion taken together are adequate with regard to his claim concerning agenesis of the corpus callosum. A physical examination of and interview with the Veteran were completed, along with a review of the relevant records and history. Moreover, both examiners provided clear conclusions with supporting data, and reasoned medical explanations connecting the two. Stefl v. Nicholson, 21 Vet. App. 120, 124-25 (2007); Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 304 (2008). Thus, the VA met its duty to provide a medical examination or opinion pursuant to 38 C.F.R. § 3.159(c)(4)(i) in connection with his claim of service connection for agenesis of the corpus callosum. 

The Veteran has not made the RO or the Board aware of any additional pertinent evidence that needs to be obtained in order to fairly decide his claim, and has not argued that any error or deficiency in the accomplishment of the duty to notify and duty to assist has prejudiced him in the adjudication of the issue being decided. As such, the Board concludes that all reasonable efforts were made by the VA to obtain evidence necessary to substantiate the Veteran's claim, and he will not be prejudiced as a result of the Board proceeding to a decision on the merits.

II. Service Connection for Agenesis of the Corpus Callosum

The Veteran seeks to establish service connection for agenesis of the corpus callosum with associated lipoma, which he initially claimed as brain tumor. Specifically, the Veteran claims that in 1972, while working as a radar operator in service, he suddenly felt an intense pain over the left top of his head with blurring of vision. A study was performed during service showing a lipoma of the corpus callosum, with calcification present at the rostal portion. In May 2005, he was diagnosed with partial agenesis of corpus callosum with associated lipoma and left small pontine infarct based on his brain magnetic resonance imaging (MRI) findings. 
 
Service connection may be granted for a disease or injury incurred in or aggravated by active military service. 38 U.S.C.A. §§ 1110, 1131; 38 C.F.R. § 3.303. This means that the facts establish that a particular injury or disease resulting in disability was incurred coincident with service in the Armed Forces, or if preexisting such service, was aggravated therein. 38 U.S.C.A. §§ 1110, 1131; 38 C.F.R. § 3.303(a).

Although service connection may be granted for diseases or injuries incurred in service, congenital or developmental defects are not subject to service connection because they are not diseases or injuries within the meaning of the applicable legislation. See 38 C.F.R. § 3.303(c); see also O'Bryan v. McDonald, 771 F.3d 1376, 1379 (Fed. Cir. 2014). A congenital defect may, nevertheless, be subject to superimposed disease or injury. If, during an individual's military service, superimposed disease or injury does occur, service-connection may be warranted for the resultant disability. See VAOPGCPREC 82-90.

A congenital or developmental defect is an abnormality or condition which is static and incapable of improvement or deterioration. O'Bryan, 771 F.3d at 1381; see also VAOPGCPREC 82-90. By contrast, a congenital or developmental condition that is progressive in nature, i.e. one that can worsen over time, is a "disease" rather than a "defect," and as such may be service connected if the disease is aggravated by service. O'Bryan, 771 F.3d at 1380; see also Quirin v. Shinseki, 22 Vet. App. 390, 396 (2009); Monroe v. Brown, 4 Vet. App. 513, 515 (1993). 

Furthermore, a veteran is not entitled to service connection for any disease or injury that clearly and unmistakably preexisted service and was not aggravated by service. See 38 C.F.R. § 3.304; see also Quirin, 22 Vet. App. at 396 (citing to Wagner v. Principi, 370 F.3d 1089, 1096 (Fed. Cir. 2004)). In general, when no preexisting condition is noted upon entry into service, a veteran is presumed to have been sound upon entry. See 38 U.S.C. § 1111; see also 38 C.F.R. § 3.304(b). Nevertheless, if VA can establish that the disability both clearly and unmistakably preexisted service and clearly and unmistakably was not aggravated by service, the presumption of soundness may be rebutted and the claim denied. See id. 

When considering the pertinent evidence of record in light of the above-noted legal authority, the Board finds that service connection for agenesis of the corpus callosum is not warranted. Based on the evidence of record, the Board finds that the condition at issue is a congenital defect that was not subjected to a superimposed disease or injury creating additional disability, and thus not subject to service connection as a matter of law. Alternatively, the Board finds that service connection is not warranted because the evidence of record shows that the Veteran's partial agenesis of the corpus callosum with associated lipoma clearly and unmistakably preexisted service and clearly and unmistakably was not aggravated by service.

 A. Congenital Defect

The medical evidence of record demonstrates that agenesis of the corpus callosum with associated lipoma is a congenital condition that remains static and is not capable of progression, and thus a "defect" rather than a "disease" within the meaning of 38 C.F.R. § 3.303(c). The March 2009 VA examiner, a neurologist, stated that agenesis of the corpus callosum is a congenital or a developmental anomaly present at the time of birth. She explained that this type of congenital anomaly occurs when disturbance of embryogenesis in the first trimester of gestation by some unknown insult leads to failure of the callosal axons to pass across the midline. She further explained that this is an anomaly that may occur in isolation or in association with other central nervous system or systemic malformations. Additionally, she wrote that midline lipoma of the corpus callosum is a commonly associated anomaly, occurring in 10 percent of cases of agenesis of the corpus callosum. 

The March 2009 VA examiner's opinion was reinforced by the April 2014 opinion of a second VA neurologist. The April 2014 examiner agreed that agenesis of the corpus callosum is a congenital defect. He confirmed that agenesis of the corpus callosum, complete or partial, results from disruption of the early stages of callosal development during gestation. He explained that the corpus callosum forms late in the first trimester of gestation during human development, and that agenesis of the corpus callosum can result from genetic, infectious, vascular or toxic causes. He noted that approximately one third of the cases are caused by genetic alterations, while the other two thirds have no identifiable reasons. He also reported that the defect can be identified by prenatal ultrasound, postnatal CT or MRI scan. 

Based on these two opinions, which the Board finds credible and highly probative, the Board finds that the Veteran's partial agenesis of the corpus callosum with associated lipoma is a congenital defect. "Agenesis" is "the absence of an organ, usually referring to such absence resulting from failure of appearance of its primordium in embryonic development." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY (DORLAND'S) 1956 (32nd ed. 2012). Thus, it follows that "partial agenesis" of the corpus callosum is a partial absence of part of the brain. As the two neurologists explained, this partial absence of the corpus callosum is a systemic malformation or structural defect of part of the brain. This malformation occurs during gestation, and is the result of a variety of causes, including those that are genetic, vascular, infectious or toxic in nature. Additionally, the March 2009 VA examiner explained that the lipoma was a commonly associated anomaly, occurring in approximately 10 percent of cases of agenesis of the corpus callosum. The Board accepts the opinions of both the March 2009 and the April 2014 examiner as being highly probative concerning the issue of whether ACC and the associated lipoma is a congenital defect, as these opinions were based on a review of all historical records, and contained detailed rationale for the medical conclusions given. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295 (2008); see also Boggs v. West, 11 Vet. App. 334 (1998). 

Moreover, there is no evidence of record suggesting that agenesis of the corpus callosum and associated lipoma is a disease. There is no evidence that ACC with associated lipoma is anything other than a static condition that will not improve or worsen over time. Instead, it is a structural or inherent abnormality that is more or less stationary in nature. See O'Bryan, 771 F.3d at 1379 (quoting VAOPGCPREC 82-90). The Veteran was born without part of his corpus callosum. This is a structural defect, and as evidenced by the opinions of the VA examiners, it is incapable of improvement or deterioration. See id. Thus, it is a congenital defect rather than a disease, and as such is not subject to service connection.

Furthermore, there is no competent evidence which shows that the Veteran's agenesis of the corpus callosum with associated lipoma was subject to an in-service superimposed disease or injury that created additional disability. As explained by the April 2014 VA neurologist, the Veteran's partial agenesis of the corpus callosum with lipoma is a congenital defect that has remained static. The neurologist explained that the Veteran's multiple brain imaging studies demonstrated a stable defect without significant changes in size or shape over many years. The neurologist indicated that disease or injury superimposed upon such a defect should manifest with subjective clinical findings or changes in neuroimaging. He noted that in this case, there is no subjective clinical evidence that additional disability related to agenesis of the corpus callosum resulted from in-service disease or injury. 

Based on the medical evidence from the March 2009 and April 2014 VA examiners, as well as the lack of any competent evidence to the contrary, the Board finds that the Veteran's partial agenesis of the corpus callosum with associated lipoma is a congenital defect that was not subject to a superimposed disease or injury in service that created an additional disability. As such, service connection for this condition is denied as a matter of law. See Sabonis v. Brown, 6 Vet. App. 426, 430 (1994).

B. Clearly and Unmistakably Preexisted and Not Aggravated By Service

Even assuming that the Veteran's partial agenesis of the corpus callosum with associated lipoma is a disease or injury rather than a congenital defect, entitlement to service connection is still not warranted in this matter because the clear and unmistakable evidence of record establishes both that the condition in question existed prior to and was not aggravated by service. 

Even though the Veteran first learned of the lipoma in service, and thereafter learned that he suffered from agenesis of the corpus callosum, the clear and unmistakable evidence of record shows that this defect was nonetheless present since his birth. Although the Veteran's enlistment examination dated in September 1970 did not document the existence of agenesis of the corpus callosum on entry into service, the April 2014 VA neurologist explained that agenesis of the corpus callosum had been an existing condition since he was born. He explained that the corpus callosum forms late in the first trimester of gestation during human development, and that agenesis of the corpus callosum can be identified by prenatal ultrasound, postnatal CT, or MRI scan. He indicated, however, that many patients with this condition are often unaware of it, and only learn of the defect when it is identified as an accidental finding. Without any evidence to the contrary, the Board finds that the evidence shows that the Veteran's partial agenesis of the corpus callosum with associated lipoma preexisted service. 38 U.S.C.A. §§ 1111, 1137.

Furthermore, the clear and unmistakable evidence of record shows that the Veteran's agenesis of the corpus callosum with associated lipoma was not aggravated, i.e. made worse beyond its natural progression, by service. Again, as explained by the April 2014 VA neurologist, the objective evidence shows that the Veteran's partial agenesis of the corpus callosum has remained static for many years, with no evidence of an increase or worsening during service. The neurologist explained that the Veteran's multiple brain imaging studies demonstrate a stable defect without significant changes in size or shape over many years. He further stated that even though the Veteran has no imaging data prior to joining the military service, his partial agenesis of the corpus callosum has been an existing condition since his birth, and the defect has not undergone any change as a result of active service as evidenced by subjective findings clinically, and by brain neuroimaging. 

Moreover, with regard to the headaches the Veteran experienced in service, the May 2009 VA examiner opined that the headaches he described are one of classic tension-type headache, which is a muscle contraction type of headache. She found that at that time there was no mixed-type component presented (that of migraine, sinus or cluster, for example). She further found that even though he has a diagnosis of partial agenesis of the corpus callosum with associated large lipoma, there is no radiographic description that this is causing mass effect, and there are no physical findings suggestive of intracranial pressure. 

Significantly, there is no evidence of record, other than the Veteran's statements, that his agenesis of the corpus callosum is related to his period of service or was aggravated by service. The Board points out that, although lay persons are competent to provide opinions on some medical issues, as to the specific issues in this case, the etiology of his agenesis of the corpus callosum and whether it was not aggravated by service, falls outside the realm of common knowledge of a lay person. See Kahana v. Shinseki, 24 Vet. App. 428, 435 (2011); see also Jandreau v. Nicholson, 492 F.3d 1372, 1377 n. 4 (Fed. Cir. 2007). In fact, it is because of the complexity of the medical issues involved in this case that an additional medical opinion was sought from a neurologist. In this case, the Board has determined that the medical evidence, to include the findings of the March 2009 and April 2014 VA examiners, is more probative on the issues in question and outweighs the lay statements of the Veteran. Consequently, the Board finds that the clear and unmistakable evidence of record demonstrates that the Veteran's partial agenesis of the corpus callosum with associated lipoma both preexisted and was not aggravated by service.

Based on the foregoing, the Board finds that service connection for agenesis of the corpus callosum is not warranted. 


ORDER

Entitlement to service connection for agenesis of the corpus callosum, claimed as a brain tumor (lipoma), is denied.



REMAND

The Veteran seeks service connection for headaches. He claims that he began having tension headaches during service, which have been recurrent since separation. His STRs show that he complained of and was treated for tension headaches in service. See May 1972 STR. 

During his May 2009 VA examination, the examiner diagnosed the Veteran as having tension-type headaches separate from his diagnosis of partial agenesis of the corpus callosum with associated large lipoma. The examiner opined that the Veteran's headaches were not caused by or a result of his active service. In support of her opinion, she stated that the Veteran's description of headache is one of classic tension-type headache, which is a muscle contraction type of headache. She further noted that there is no radiographic description that the agenesis of the corpus callosum with associated large lipoma is causing a mass effect, nor are there any physical findings suggestive of increased intracranial pressure. She did not, however, offer as opinion as to whether his current headaches are indicative of a disorder that had its onset during service, or if they are otherwise related to some injury or disease incurred in service. Thus, the Board finds that a new opinion is necessary to address these questions.

Additionally, the record shows that the Veteran has had ongoing treatment for his headaches, but there are no current VA or private treatment records in the claims file. On remand, additional VA and private treatment records should be obtained. See 38 C.F.R. § 3.159(c).

Accordingly, the case is REMANDED for the following action:

1. Ask the Veteran to identify any additional relevant treatment records (private or VA) he wants to have considered in connection with his appeal. The identified records should be sought. 

2. Notify the Veteran that he may submit lay statements from himself and from other individuals who have first-hand knowledge, and/or were contemporaneously informed, of his in-service and post-service headaches and related symptomatology. The Veteran should be provided an appropriate amount of time to submit this lay evidence.

3. Then schedule the Veteran for an appropriate VA examination(s) to determine the nature, extent, onset and etiology of any headache disorder diagnosed. The claims folder should be made available to and reviewed by the examiner. All indicated studies should be performed and all findings should be reported in detail. 

After a review of the record on appeal and an examination of the Veteran, the examiner should state all diagnosed headache disorders and provide an opinion as to whether it is at least as likely as not that any diagnosed headache disorder had its onset during service or is otherwise related to some injury or disease incurred in service, including the headaches he experienced in service as noted in his STRs. 

In providing these opinions, the examiner(s) should acknowledge and discuss the Veteran's own assertions and any other lay evidence of record concerning his observable symptoms. A complete rationale for all findings and conclusions should be set forth in a report.

4. Then readjudicate the remanded issue. If the benefit sought on appeal remains denied, the Veteran should be furnished a Supplemental Statement of the Case and be given an opportunity to submit written or other argument in response before the claims file is returned to the Board for further appellate consideration.

The appellant has the right to submit additional evidence and argument on the matter the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).




______________________________________________
MICHAEL E. KILCOYNE
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs