Citation Nr: 1829603 
Decision Date: 06/26/18 Archive Date: 07/02/18

DOCKET NO. 14-20 742A ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Petersburg, Florida


THE ISSUES

1. Entitlement to an initial rating higher than 10 percent for tinnitus.

2. Entitlement to an initial compensable rating for right-ear hearing loss.

3. Entitlement to an increased rating for post-traumatic stress disorder (PTSD), currently rated at 30 percent disabling.

4. Entitlement to an increased rating for fibromyalgia, currently rated at 40 percent disabling.

5. Whether new and material evidence has been received to reopen a claim for service connection for left-ear hearing loss.

6. Entitlement to service connection for left-ear hearing loss.

7. Entitlement to service connection for a cervical spine disorder

8. Entitlement to service connection for a low back disorder. 

9. Entitlement to service connection for erectile dysfunction.


REPRESENTATION

Veteran represented by: Florida Department of Veterans Affairs


ATTORNEY FOR THE BOARD

Buck Denton, Associate Counsel


INTRODUCTION

The Veteran served on active duty from September 2001 to June 2005.

This matter comes to the Board of Veterans' Appeals (Board) on appeal from rating decisions issued by the Department of Veterans Affairs (VA) Regional Offices (RO) in Montgomery, Alabama and St. Petersburg, Florida.

The issues of entitlement to increased ratings for right-ear hearing loss and PTSD; and entitlement to service connection for left-ear hearing loss, a cervical spine disorder, and erectile dysfunction are addressed in the REMAND portion of the decision below and are REMANDED to the Agency of Original Jurisdiction (AOJ).


FINDINGS OF FACTS

1. In a final decision issued in August 2007, the RO denied service connection for bilateral hearing loss.

2. Evidence added to the record since the last final denial in August 2007 is not cumulative or redundant of the evidence of record at the time of the decision and raises a reasonable possibility of substantiating the Veteran's claim of entitlement to service connection for hearing loss in the left ear.

3. The evidence is in at least a state of equipoise as to whether the Veteran's low back disorder is caused or aggravated by his service-connected fibromyalgia. 

4. The Veteran's tinnitus has been assigned a 10 percent evaluation throughout the appeal period, which is the maximum rating authorized for tinnitus under Diagnostic Code 6260, for either a unilateral or bilateral condition.

5. The Veteran's fibromyalgia has been assigned a 40 percent evaluation, which is the maximum rating authorized for fibromyalgia under Diagnostic Code 5025, from July 5, 2011, the date of claim or throughout the appeal period.


CONCLUSIONS OF LAW

1. New and material evidence has been received to reopen the claim of entitlement to service connection for hearing loss in the left ear. 38 U.S.C. § 5108 (2012); 38 C.F.R. § 3.156 (a) (2017).

2. The criteria for establishing service connection for a low back disorder have been met. 38 U.S.C. §§ 1110, 5107(b) (2012); 38 C.F.R. §§ 3.102, 3.303, 3.310 (2017).

3. The criteria are not met for the assignment of a schedular evaluation in excess of 10 percent for bilateral tinnitus. 38 U.S.C. §§ 1155, 5107(b) (2012); 38 C.F.R. 
§§ 3.102, 3.159, 3.321, 4.1-4.7, 4.21, 4.87, Diagnostic Code 6260 (2017).

4. The criteria are not met for an increased disability rating in excess of 40 percent for the Veteran's service-connected fibromyalgia disability. 38 U.S.C. §§ 1155, 5107(b) (2012); 38 C.F.R. §§ 3.102, 3.159, 4.1-4.7, 4.21, 4.71a, Diagnostic Code 5025 (2017).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. New and Material Evidence

The Veteran petitions to reopen his previously denied service connection claim for hearing loss in the left ear. For the following reasons, the Board finds that reopening the claim is warranted.

Service connection for bilateral ear hearing loss was previously denied in an August 2007 rating decision because the RO found that the evidence of record did not show audiometric findings to meet the criteria for a grant of service connection for a hearing loss disability. Although notified of the denial in August 2007, the Veteran did not appeal the August 2007 rating decision or submit new and material evidence within the appeal period. Therefore, the May 2006 rating decision is final. See 38 U.S.C. § 7105(c); 38 C.F.R. § 3.156(b); Young v. Shinseki, 22 Vet. App. 461, 466 (2009) (holding that new and material evidence received within one year of an RO decision prevents that decision from becoming final). 

In order to reopen a previously and finally disallowed claim, new and material evidence must be submitted by the claimant or secured by VA with respect to that claim since the last final denial. See 38 U.S.C. § 5108; Evans v. Brown, 9 Vet. App. 273, 282-3 (1996) (holding that § 5108 requires a review of all evidence submitted by or on behalf of a claimant since the last final denial on any basis to determine whether a claim must be reopened).

Under VA regulations, "new evidence" means evidence not previously submitted to agency decision makers, and "material evidence" means existing evidence that, by itself or when considered with previous evidence of record, relates to an unestablished fact necessary to substantiate the claim. 38 C.F.R. § 3.156(a). The new evidence must neither be cumulative nor redundant of the evidence of record at the time of the last prior final denial of the claim sought to be reopened, and must raise a reasonable possibility of substantiating the claim. Id.; see Shade v. Shinseki, 24 Vet. App. 110, 117 (2010) (holding that there is a "low threshold" for reopening).

For the purpose of establishing whether new and material evidence has been submitted, the credibility of the evidence is to be presumed, unless it is inherently false or untrue or, if it is in the nature of a statement or other assertion, it is beyond the competence of the person making the assertion. Duran v. Brown, 7 Vet. App. 216, 220 (1994); Justus v. Principi, 3 Vet. App. 510, 513 (1992).

The Veteran's private treating physician, Dr. P.J.Y., submitted a June 2011 medical report stating that the Veteran had bilateral hearing loss. At the time of the August 2007 rating decision, Dr. P.J.Y.'s findings were not of record. Thus, the new evidence is not cumulative or redundant of the evidence previously of record, relates to an unestablished fact necessary to substantiate service connection, and raises a reasonable possibility of substantiating the claim. See 38 C.F.R. § 3.356(a). As noted above, the credibility of the evidence is also presumed. Therefore, the claim is reopened.

II. Service Connection - Low Back Disorder

The Veteran asserts entitlement to service connection for a disability of the lumbar spine. Under VA law, service connection may be granted for any current disability that is the result of a disease or injury incurred in or aggravated by active military service. 38 U.S.C. § 1110; 38 C.F.R. § 3.303(a). Service connection may also be granted for a disease diagnosed after discharge, where all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d). Establishing service connection generally requires medical or, in certain circumstances, lay evidence of (1) a current disability; (2) an in-service incurrence or aggravation of a disease or injury; and (3) a nexus between the claimed in-service disease or injury and the present disability. See Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009).

Service connection may also be granted on a secondary basis for a disability which is proximately due to, or the result of, a service-connected disease or injury. 
38 C.F.R. § 3.310(a). Secondary service connection may also be granted for aggravation of a disease or injury by a service-connected disability. Id. To establish secondary service connection based on aggravation, the evidence must show an increase in severity of a disease or injury beyond a medically established baseline that is proximately due to or the result of a service-connected disease or injury and not due to the natural progress of the nonservice-connected condition. 38 C.F.R. § 3.310(b).

Here, VA and private treatment records dated throughout the pendency of the claim reflect a current low back pathology, including diagnoses of degenerative disc disease, disc herniation, spondylosis of the lumbar spine, and a L5-S1 annular tear. Thus, a current lumbar spine disorder is established.

The Veteran's private treating physician, Dr. P.J.Y., submitted a June 2011 etiological opinion diagnosing the Veteran with discogenic thoracic spine pain and degenerative joint disease of the lumbar spine. The physician's comments indicated his review of the medical evidence of record, to include acknowledgement of a VA examination for the Veteran's service-connected fibromyalgia. Dr. P.J.Y. ultimately determined that the Veteran's additional pathophysiology of the thoracic and lumbar spine was associated with and/or attributable to his fibromyalgia.

The Board finds Dr. P.J.Y.'s June 2011 opinion to be probative as it is underpinned by sufficient rationale that is based on a review of the Veteran's medical history and imaging studies, specifically that the Veteran has additional pathophysiological issues to his lumbar spine that are associated with his service-connected fibromyalgia. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 304 (2008) (the probative value of a medical opinion comes from its reasoning).

The Board notes that a VA opinion has not been obtained to determine the etiology of the Veteran's back disorder. However, the private medical opinion of record relating the Veteran's low back disorder to a service-connected disability, at the very least, places the evidence in relative equipoise. 

Accordingly, the Board finds that the evidence for and against this claim is at least in equipoise. When the evidence for and against the claim is in relative equipoise, by law, the Board must resolve all reasonable doubt in favor of the Veteran. See 38 U.S.C. §§ 1154 (b); 5107 (2012); 38 C.F.R. § 3.102 (2017); see also Gilbert v. Derwinski, 1 Vet. App. 49, 55 (1990). Therefore, the benefit of the doubt must be resolved in favor of the Veteran, and entitlement to service connection for a low back disability is granted.

III. Increased Ratings

Disability ratings are intended to compensate for impairment in earning capacity due to a service-connected disorder. 38 U.S.C. § 1155. Separate diagnostic codes identify the various disabilities. Id.; 38 C.F.R. § 4.27.

If there is a question as to which disability rating to apply to a Veteran's disability, the higher rating will be assigned if the disability picture more nearly approximates the criteria for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7.

Where service connection has already been established and an increase in the disability rating is at issue, it is the present level of disability that is of primary concern. Francisco v. Brown, 7 Vet. App. 55 (1994). Nonetheless, in determining the present level of a disability for any increased rating claim, the Board must consider the application of staged ratings where indicated by the evidence of record. See, e.g., Hart v. Mansfield, 21 Vet. App. 505 (2007).

The Veteran bears the burden of presenting and supporting his claim for benefits. 38 U.S.C. § 5107(a). In its evaluation, the Board considers all information and lay and medical evidence of record. 38 U.S.C. § 5107(b). When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Board gives the benefit of the doubt to the claimant. Id.

A. Tinnitus

The Veteran's tinnitus is currently assigned a 10 percent evaluation pursuant to 38 C.F.R. § 4.87, Code 6260 (recurrent tinnitus). The Veteran contends that he should be assigned a separate 10 percent rating for each ear for his tinnitus. 

Diagnostic Code 6260 was revised, effective June 13, 2003, to clarify existing VA practice that only a single 10 percent evaluation is assigned for "recurrent" tinnitus, whether the sound is perceived as being in one ear, both ears, or in the head.
38 C.F.R. § 4.87, Code 6260, Note (2).

Note (1) to Diagnostic Code 6260 provides that a separate rating for tinnitus may be combined with a rating under Diagnostic Codes 6100, 6200, 6204, or other diagnostic code, except when tinnitus supports a rating under one of those Diagnostic Codes. Note (3) also provides that objective tinnitus (in which the sound is audible to other people and has a definable cause that may or may not be pathologic) should not be rated under Diagnostic Code 6260, but should be rated as part of any underlying condition causing the tinnitus. 38 C.F.R. § 4.87.

It is now well-settled that Diagnostic Code 6260 limits a veteran to a single 
10 percent maximum rating for tinnitus, regardless of whether the tinnitus is unilateral or bilateral. Indeed, the Federal Circuit has held that the maximum schedular rating available for tinnitus is 10 percent. See Smith v. Nicholson 451 F.3d 1344, 1348 (Fed. Cir. 2006). Currently, the Veteran's tinnitus is already evaluated as 10 percent disabling. Thus, there is no legal basis upon which to award an increased rating for tinnitus in each ear on a schedular basis, and the Veteran's appeal must be denied. Sabonis v. Brown, 6 Vet. App. 426, 430 (1994).

Finally, neither the Veteran nor the evidence suggests that the Veteran experiences anything more than recurrent tinnitus. Thus, Diagnostic Code 6260 contemplates exactly the level of severity and symptomatology reported by the Veteran for tinnitus. Moreover, even if the symptomatology and severity were not contemplated by the rating criteria, the weight of the evidence does not reach a state of equipoise as to the Veteran displaying governing norms, such as frequent hospitalizations or marked interference with employment, above and beyond the compensation provided for in the schedule. Accordingly, referral for extraschedular evaluation is not appropriate.

B. Fibromyalgia

The Veteran is also seeking an increased rating for his service-connected fibromyalgia, currently rated at 40 percent under DC 5025.

This diagnostic code addresses symptoms of widespread musculoskeletal pain and tender joints, with or without associated fatigue, sleep disturbance, stiffness, paresthesias, headache, irritable bowel symptoms, depression, anxiety, or Reynaud's-like symptoms. Under this diagnostic code, a 10 percent rating is assigned when fibromyalgia requires continuous medication for control. A higher 20 percent rating is assigned when there are episodic symptoms present more than one-third of the time. A maximum 40 percent rating is assigned for symptoms which are constant, or nearly constant, and refractory to therapy.

Here, the Veteran is already receiving the maximum allowable rating contemplated by the rating schedule. Nevertheless, the Board must determine whether evaluation according to the established schedule of disability ratings is inadequate, thus requiring the RO to refer a claim to the Under Secretary for Benefits or the Director, Compensation Service, for consideration of an "extraschedular evaluation commensurate with the average earning capacity impairment due exclusively to the service-connected disability or disabilities." 38 C.F.R. § 3.321(b)(1).

An extraschedular evaluation is for consideration where a service-connected disability presents an exceptional or unusual disability picture. An exceptional or unusual disability picture occurs where the diagnostic criteria do not reasonably describe or contemplate the severity and symptomatology of the Veteran's service-connected disability. Thun v. Peake, 22 Vet. App. 111, 115 (2008). If there is an exceptional or unusual disability picture, the Board must consider whether the disability picture exhibits other factors such as marked interference with employment or frequent periods of hospitalization. Id., at 115-116. When either of those elements have been satisfied, the appeal must be referred for consideration of the assignment of an extraschedular rating. Otherwise, the schedular evaluation is adequate, and referral is not required. 38 C.F.R. § 3.321 (b)(1) (2017); Thun, 22 Vet. App. at 116.

In this case, the schedular evaluation noted above is adequate. The symptoms of the Veteran's fibromyalgia and associated conditions are contemplated by the schedular criteria. In the November 2011 VA medical opinion, the examiner documents the Veteran's joint stiffness, unexplained fatigue, musculoskeletal symptoms, and decreased exercise tolerance. The Board notes that DC 5025 contemplates symptoms of this sort. Furthermore, the record does not show there has been any marked interference with employment. It was noted during his November 2011 examination that the Veteran worked as a firefighter. In addition, the Veteran has not argued (and the record does not support) that his condition has resulted in frequent periods of hospitalization. Accordingly, referral to the Under Secretary for Benefits or the Director, Compensation Service, is not warranted.

Accordingly, the Veteran's current 40 percent disability has been determined to be appropriate. As the rating schedule is adequate to evaluate the disability, referral for extraschedular consideration is not in order.


ORDER

New and material having been received, the claim for service connection for hearing loss in the left ear is reopened.

Service connection for a lumbar spine disability is granted.

A rating in excess of 10 percent for tinnitus is denied.

A rating in excess of 40 percent for fibromyalgia is denied.


REMAND

Although the Board regrets the delay, the Board must remand these claims to ensure there is a complete record so the Veteran is afforded every possible consideration.

Regarding the Veteran's hearing loss claims, he was last provided a VA audiological examination in August 2012. At that time, the examination revealed normal hearing for VA purposes in the left ear. Subsequent statements received from the Veteran indicate that his hearing loss has gotten worse since the last VA examination. Given this, and since the August 2012 VA examination is nearly 5 years old, the Veteran must be afforded a new VA examination to determine the severity of the hearing loss in his service-connected right ear and whether his left ear hearing loss constitutes a disability for purposes of a VA disability. 

The Veteran also seeks service connection for a cervical spine disability. The Veteran's private treating physician, Dr. P.J.Y., submitted a June 2011 etiological opinion diagnosing the Veteran with degenerative joint disease of the cervical spine and asymptomatic Chiari Type I malformation, a congenital condition. Dr. P.J.Y. also opined that the Veteran's cervical spine disability was associated with his fibromyalgia. A subsequent September 2012 VA examination confirmed the congenital condition diagnosis but did not address the Veteran's additional diagnosis of degenerative joint disease.

Congenital or developmental defects are not considered "diseases or injuries" within the meaning of applicable legislation and, hence, do not constitute disabilities for VA compensation purposes. See 38 C.F.R. §§ 3.303(c), 4.9; O'Bryan v. McDonald, 771 F.3d 1376, 1380 (Fed. Cir. 2014); Quirin v. Shinseki, 22 Vet. App. 390, 395 (2009). However, the sole fact that a disorder is congenital or hereditary in origin does not preclude service connection. See O'Bryan, 771 F.3d at 1380; Quirin, 22 Vet. App. at 395; VAOGC 8-88 (Sept. 1988), reissued as VAOPGCPREC 67-90 (July 18, 1990) (noting that diseases of hereditary origin can be incurred or aggravated in service if their symptomatology did not manifest itself until after entry on duty). Only congenital "defects," as opposed to congenital "diseases," are excluded from the types of disabilities that may be service connected, as congenital defects are not considered diseases or injuries under VA law. O'Bryan, 771 F.3d at 1380; VAOPGCPREC 82-90 (July 1990) (holding that "service connection may be granted for diseases (but not defects) of congenital, developmental or familial origin"). However, service connection may be granted for any additional disability that results where a congenital or developmental defect is subject to, or aggravated by, a superimposed disease or injury. See VAOPGCPREC 82-90 (July 18, 1990); VAOPGCPREC 67-90 (July 18, 1990).

The nature and etiology of the Veteran's cervical spine diagnosis are unclear based on the evidence currently of record. Specifically, the evidence does not address whether his congenital condition is a disease or defect, whether there is a superimposed disease or injury, or whether his diagnosed cervical spine degenerative joint disease is related to his military service. Thus, an additional VA examination and opinion are necessary. 

Regarding the Veteran's increased rating claim for PTSD, the most recent VA compensation examination addressing the severity of his PTSD was conducted in November 2011. Given that that over five years have passed since the most recent VA compensation examination, the Board finds that the Veteran's PTSD claim should be remanded to afford the Veteran with an updated VA compensation examination to assess the current degree of his disability and to obtain up-to-date relevant treatment records.

Finally, a remand is required to address the nature and etiology of the Veteran's claimed erectile dysfunction disorder and whether any erectile dysfunction is caused or aggravated by any service-connected disorder.

Accordingly, the case is REMANDED for the following action:

1. Obtain all outstanding VA and private medical records pertinent to the claims. 

2. Schedule the Veteran for a VA audiology examination to assess the current severity of his hearing loss in the right and left ears. The examiner must review the claims file and should note that review in the report. The examiner should provide audiometric findings and word recognition scores using the Maryland CNC test.

3. Schedule the Veteran for an examination with an appropriate examiner to determine the nature and etiology of the claimed cervical spine disorder. The claims file and a copy of this Remand must be made available to and reviewed by the examiner in conjunction with the opinion.

(a) Indicate whether any current cervical spine disorder(s) constitutes (i) a congenital disease, (ii) a congenital defect, and/or (iii) an acquired disease or injury;

(b) If the examiner determines any cervical spine disability includes a congenital disease, opine whether the disability was aggravated by the Veteran's military service;

(c) If the examiner determines that a congenital defect is present, opine whether the Veteran has an additional disability due to an in-service disease or injury superimposed upon such defect; and

(d) For any cervical spine diagnosis that is not found to be a congenital disease or defect, the examiner should opinion whether it is at least as likely as not (50 percent or greater probability) that the disorder was caused by or related to his military service or whether the disorder was caused or aggravated by a service-connected disability.

The examiner must provide a comprehensive report that includes a complete rationale for all opinions and conclusions reached.

4. After obtaining the Veteran's updated treatment records, schedule the Veteran for an examination with an appropriate clinician to determine the current severity of his PTSD and its impact on his occupational and social functioning. The claims file should be made available to the examiner for review, and the examiner must specifically acknowledge receipt and review of the claims file.

5. Obtain an examination and opinion for the Veteran's erectile dysfunction. The claims file and a copy of this Remand must be made available to and reviewed by the examiner in conjunction with the opinion.

(a) The examiner should provide an opinion as to whether it is at least as likely as not (50 percent or greater probability) that any current erectile dysfunction had its clinical onset during active service or is related to service.

(b) The examiner should provide an opinion as to whether it is at least as likely as not (50 percent or greater probability) that any current erectile dysfunction disorder was caused or aggravated (i.e. worsened) by any service-connected disorder.

The examiner must provide a comprehensive report that includes a complete rationale for all opinions and conclusions reached.

The Veteran has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

These claims must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C. §§ 5109B, 7112 (2012).



______________________________________________
DELYVONNE M. WHITEHEAD
Acting Veterans Law Judge, Board of Veterans' Appeals
Department of Veterans Affairs