Citation Nr: 1607921 
Decision Date: 02/29/16 Archive Date: 03/04/16

DOCKET NO. 10-18 272 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Atlanta, Georgia


THE ISSUES

1. Entitlement to an initial compensable rating for a left testicular spermatocele.

2. Entitlement to a rating in excess of 10 percent for a right ankle disability on an extraschedular basis.

3. Entitlement to a total disability rating based on individual unemployability (TDIU). 

4. Entitlement to an effective date prior to April 27, 2012, for the grant of a 100 percent disability rating for an acquired psychiatric disability. 


REPRESENTATION

Appellant represented by: Karl A. Kazmierczak, Attorney



WITNESS AT HEARING ON APPEAL

Veteran


ATTORNEY FOR THE BOARD

B. Thomas Knope, Counsel


INTRODUCTION

The Veteran retired from the Army in April 1995 after 22 years of active duty service. 

This matter is on appeal from a January 2009 decision by the Department of Veterans Affairs (VA) Regional Office (RO) in St. Petersburg, Florida. Jurisdiction over the appeal is currently with the RO in Atlanta, Georgia. 

The Veteran testified before the undersigned Veterans Law Judge in January 2011. A transcript of the hearing is of record.

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2015). 38 U.S.C.A. § 7107(a)(2) (West 2014 & Supp. 2015).

The issue of entitlement to an effective date prior to April 27, 2012, for the grant of a 100 percent rating for an acquired psychiatric disorder is addressed in the REMAND portion of the decision below and is REMANDED to the Agency of Original Jurisdiction (AOJ).



FINDINGS OF FACT

1. The Veteran's left spermatocele has been characterized by symptoms such as minor discomfort and aching; however, long-term therapy, 1 to 2 hospitalizations per year and/or "intermittent intensive management" have not been shown. 

2. The rating criteria to evaluate the level of disability for the Veteran's service-connected left spermatocele and right ankle disability are adequate, and consideration of an extraschedular rating is not for application. 

3. The evidence indicates that the Veteran is unemployable due to his service-connected acquired psychiatric disorder.


CONCLUSIONS OF LAW

1. The criteria for an initial compensable rating for a left testicular spermatocele have not been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014 & Supp. 2015); 38 C.F.R. §§ 3.321, 4.1, 4.2, 4.3, 4.6, 4.7, 4.10, 4.14, 4.115a, 4.115b, Diagnostic Code (DC) 7525 (2015).

2. The criteria for a rating in excess of 10 percent for a right ankle disability on an extraschedular basis have not been met. 38 U.S.C.A. §§ 1155, 5103(a), 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.321, 4.1, 4.2, 4.3, 4.6, 4.7, 4.10, 4.14, 4.40, 4.45, 4.59, 4.71, 4.71a, DCs 5003, 5270, 5271 (2015).

3. The criteria for entitlement to TDIU have been met. 38 U.S.C.A. §§ 1155, 5103(a), 5103A, 5107 (West 2014 & Supp. 2015); 38 C.F.R. §§ 3.340, 3.341, 4.16 (2015).



REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

VA Duty to Notify and Assist

VA has a duty to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2014 & Supp. 2015); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2015). Proper notice from VA must inform the claimant and his representative, if any, prior to the initial unfavorable decision on a claim by the agency of original jurisdiction (AOJ) of any information and any medical or lay evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b); Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006); Pelegrini v. Principi, 18 Vet. App. 112 (2004); Quartuccio v. Principi, 16 Vet. App. 183 (2002). These notice requirements apply to all five elements of a service-connection claim (Veteran status, existence of a disability, a connection between the Veteran's service and the disability, degree of disability, and effective date of the disability). Dingess v. Nicholson, 19 Vet. App. 473 (2006). Information that a disability rating and an effective date for the award of benefits will be assigned if service connection is awarded must be included. Id.

Neither the Veteran nor his attorney has alleged prejudice with respect to notice, as is required, and none is found by the Board. See Shinseki v. Sanders, 556 U.S. 396 (2009); Goodwin v. Peake, 22 Vet. App. 128 (2008); Hartman v. Nicholson, 483 F.3d 1311 (Fed. Cir. 2007); Dunlap v. Nicholson, 21 Vet. App. 112 (2007). Indeed, the duty to notify was satisfied by way of letters sent to the Veteran that fully addressed all notice elements and was sent prior to the initial RO decision in this matter. The letters informed the Veteran of what evidence was required to substantiate the claims and of his and VA's respective duties for obtaining evidence. They also provided him with notice of what type of information and evidence was needed to establish a disability rating, as well as notice of the type of evidence necessary to establish an effective date. Therefore, adequate notice was provided to the Veteran prior to the transfer and certification of his case to the Board and complied with the requirements of 38 U.S.C.A. § 5103(a) and 38 C.F.R. § 3.159(b). 

Next, VA has a duty to assist a veteran in the development of the claim. This duty includes assisting him or her in the procurement of service treatment records and other pertinent records, and providing an examination when necessary. See 38 U.S.C.A. § 5103A (West 2014 & Supp. 2015); 38 C.F.R. § 3.159 (2015). 

After a careful review of the file, the Board finds that all necessary development has been accomplished, and therefore appellate review may proceed without prejudice to the Veteran. See Bernard v. Brown, 4 Vet. App. 384 (1993). The RO has obtained the Veteran's service treatment records and VA outpatient treatment records. The Veteran submitted treatment records from a private facility as well as his own statements in support of his claim, which are likewise of record. 

VA examinations with respect to the issues on appeal were also obtained in November 2008 and May 2012. 38 C.F.R. § 3.159(c)(4). To that end, when VA undertakes to provide a VA examination, it must ensure that the examination is adequate. Barr v. Nicholson, 21 Vet. App. 303, 312 (2007). As noted below, the Board finds that the VA examinations obtained in this case are more than adequate, they are predicated on a full understanding of the Veteran's medical history, and provide a sufficient evidentiary basis for the claim to be adjudicated. Accordingly, the Board finds that VA's duty to assist with respect to obtaining a VA examination or opinion with respect to the issue on appeal has been met. 38 C.F.R. § 3.159(c)(4). 

The Veteran was also afforded a hearing before the undersigned Veterans Law Judge in January 2011. The hearing complied with the duties set forth in 38 C.F.R. § 3.103(c)(2), which consist of (1) fully explaining the issue and (2) suggesting the submission of evidence that may have been overlooked. Bryant v. Shinseki, 23 Vet. App. 488 (2010). Notably, the Veteran was specifically asked about the symptoms related to his ankle disability and left spermatocele. He also provided testimony as to why he believed he was unemployable due to his service-connected disabilities. 

Finally, it is noted that this appeal was remanded by the Board in January 2012 in order to perform new VA examinations. The Board is now satisfied there was substantial compliance with this Remand. See Stegall v. West, 11 Vet. App. 268 (1998); Dyment v. West, 13 Vet. App. 141, 146-47 (1999). Specifically, the Veteran was provided new VA examinations in May 2012, which the Board finds adequate for adjudication purposes. After the required development was completed, this issue was readjudicated and the Veteran was sent a supplemental statement of the case in February 2013. Accordingly, the Board finds that the Remand directives were substantially complied with and, thus, there is no Stegall violation in this case.

Hence, no further notice or assistance is required to fulfill VA's duty to assist in the development of the claim. Smith v. Gober, 14 Vet. App. 227 (2000), aff'd, 281 F.3d 1384 (Fed. Cir. 2002); Dela Cruz v. Principi, 15 Vet. App. 143 (2001); see also Quartuccio v. Principi, 16 Vet. App. 183 (2002).

Increased Ratings

Disability evaluations are determined by the application of a schedule of ratings which is based on average impairment of earning capacity. Generally, the degrees of disability specified are considered adequate to compensate for considerable loss of working time from exacerbations or illnesses proportionate to the severity of the several grades of disability. See 38 C.F.R. § 4.1 (2015). Separate diagnostic codes identify the various disabilities. 38 U.S.C.A. § 1155 (West 2014 & Supp. 2015); 38 C.F.R. Part 4 (2015). While the Board typically considers only those factors contained wholly in the rating criteria, it is appropriate to consider factors outside the specific rating criteria when appropriate in order to best determine the level of occupational and social impairment. See Mauerhan v. Principi, 16 Vet. App. 436 (2002); Massey v. Brown, 7 Vet. App. 204, 208 (1994). 

Where there is a question as to which of two separate evaluations shall be applied, the higher evaluation will be assigned if the disability more closely approximates the criteria required for that particular rating. 38 C.F.R. § 4.7 (2015). When a reasonable doubt arises regarding the degree of disability, such doubt will be resolved in favor of the Veteran. 38 C.F.R. § 4.3 (2015).

Disability of the musculoskeletal system is primarily the inability, due to damage or infection in the parts of the system, to perform the normal working movements of the body with normal excursion, strength, speed, coordination, and endurance. It is essential that the examination on which ratings are based adequately portray the anatomical damage, and the functional loss, with respect to all these elements.

The functional loss may be due to absence of part, or all, of the necessary bones, joints and muscles, or associated structures, or to deformity, adhesions, defective enervation, or other pathology, or it may be due to pain, supported by adequate pathology and evidenced by visible behavior of the claimant undertaking the motion. Weakness is as important as limitation of motion, and a part that becomes painful on use must be regarded as seriously disabled. 38 C.F.R. §§ 4.10, 4.40, 4.45 (2015); see also DeLuca v. Brown, 8 Vet. App. 202 (1995). The provisions of 38 C.F.R. § 4.14 (avoidance of pyramiding) do not forbid consideration of a higher rating based on greater limitation of motion due to pain on use, including during flare-ups. 

The intent of the rating schedule is to recognize painful motion with joint or periarticular pathology as productive of disability. Thus, actually painful, unstable, or malaligned joints, due to healed injury, are as entitled to at least the minimum compensable rating for the joint. The joints should be tested for pain on both active and passive motion, in weight-bearing and nonweight-bearing and, if possible, with the range of the opposite undamaged joint. See 38 C.F.R. § 4.59 (2015).

Where entitlement to compensation has already been established and an increase in the disability rating is at issue, it is the present level of disability that is of primary concern. See Francisco v. Brown, 7 Vet. App. 55, 58 (1994). Nevertheless, where the evidence contains factual findings that show a change in the severity of symptoms during the course of the rating period on appeal, assignment of staged ratings would be permissible. See Hart v. Mansfield, 21 Vet. App. 505 (2007).

On the other hand, in cases where the Veteran's claim arises from a disagreement with the initial evaluation following the grant of service connection, the Board shall consider the entire period of claim to see if the evidence warrants the assignment of different ratings for different periods of time during these claims a practice known as "staged" ratings. Fenderson v. West, 12 Vet. App. 119 (1999).

Left Testicular Spermatocele

In a January 2009 rating decision, the Veteran was granted service connection for a left testicular spermatocele. A noncompensable rating was assigned under 38 C.F.R. § 4.115b, DC 7526 (addressing chronic epididymo-orchitis). He has disagreed with the assigned noncompensable rating. 

Disabilities characterized under this DC 7526 are rated the same as a urinary tract infection which, under 38 C.F.R. § 4.115a, allows for a 10 percent rating when the evidence shows long-term therapy, 1 to 2 hospitalizations per year and/or "intermittent intensive management." 

Based on the evidence of record, a compensable rating is not warranted. Specifically, at private physical evaluation in April 2008, the Veteran complained of pain in the testicular area with some pain during urination, as well as some hematuria. His examination was normal at that time, with the exception of a left spermatocele, and his urinalysis was negative. His treatment was limited to pain control medication, but no intensive treatment was noted. 

At a VA examination in November 2008, the Veteran stated that he has had the spermatocele for some time, but was told that it did not require removal. He stated that it was now more painful, with flare-ups approximately once or twice a month. He denied any history of hospitalization, urinary tract infections or other significant urinary symptoms. An examination of the testicles revealed the presence of a marble-sized mildly tender mass above the left testicle. His examination was otherwise normal. 

At his most recent VA examination in May 2012, the Veteran stated that he has been experiencing discomfort in that the spermatocele "hurts and pulls," but was only a 1 out of 10 in severity. His pain increases with strenuous activity. He does not take continuous medication, and he has not experienced any voiding or renal dysfunction. Although the small mass was again observed above the left testicle, the examination was otherwise normal. 

Given this information, the Board finds that there is no clinical evidence of long-term therapy, 1 to 2 hospitalizations per year and/or "intermittent intensive management" related to the Veteran's testicle disorder. There is no other diagnostic code in 38 C.F.R. § 4.115b that is applicable. Notably, as there has been no evidence of renal dysfunction of any sort, DCs 7500-7509 are not for application. The Veteran has also routinely denied any specific voiding obstruction, loss or erectile power or any other similar disorders Therefore, a compensable rating is not warranted on a schedular basis.

In considering the appropriate disability rating, the Board has also considered the Veteran's statements that his left testicular spermatocele is worse than the rating he currently receives. In rendering a decision on appeal, the Board must analyze the credibility and probative value of the evidence, account for the evidence which it finds to be persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the claimant. See Gabrielson v. Brown, 7 Vet. App. 36, 39-40 (1994); Gilbert v. Derwinski, 1 Vet. App. 49, 57 (1990).

Competency of evidence differs from weight and credibility. While the Veteran is competent to report symptoms because this requires only personal knowledge as it comes to him through his senses, he is not competent to identify a specific level of disability of his left testicular spermatocele according to the appropriate diagnostic codes. Rucker v. Brown, 10 Vet. App. 67, 74 (1997); Layno v. Brown, 6 Vet. App. 465, 469 (1994); see also Cartright v. Derwinski, 2 Vet. App. 24, 25 (1991) ("although interest may affect the credibility of testimony, it does not affect competency to testify"). 

On the other hand, such competent evidence concerning the nature and extent of the Veteran's left spermatocele has been provided by the medical personnel who have examined him during the current appeal and who have rendered pertinent opinions in conjunction with the evaluations. The medical findings (as provided in the examination reports) directly address the criteria under which these disabilities are evaluated.

Extraschedular Considerations

In a January 2012 decision, the Board determined that a schedular rating in excess of 10 percent was not warranted for the Veteran's right ankle disability. The question of whether an increased rating was warranted on an extraschedular basis was deferred. Therefore, whether an extraschedular rating is warranted for either his right ankle and left spermatocele are considered here. 

The question of an extraschedular rating is a component of a claim for an increased rating. Bagwell v. Brown, 9 Vet. App. 337, 339 (1996). Although the Board may not assign an extraschedular rating in the first instance, it must specifically adjudicate whether to refer a case for extraschedular evaluation when the issue either is raised by the claimant or is reasonably raised by the evidence of record. Barringer v. Peake, 22 Vet. App. 242 (2008).

In considering whether an extraschedular rating may be warranted, VA must first determine whether the available applicable schedular rating criteria are inadequate because they do not contemplate the Veteran's level of disability and symptomatology. If the rating criteria are inadequate, VA must then determine whether the Veteran exhibits an exceptional disability picture indicated by other related factors such as marked interference with employment or frequent periods of hospitalization. If such related factors are exhibited, then referral must be made to the Under Secretary for Benefits or the Director of the Compensation and Pension Service for extraschedular consideration. See Thun v. Peake, 22 Vet. App. 111 (2008). 

Here, the evidence does not indicate that Veteran's spermatocele or right ankle disability could not be adequately contemplated by the applicable schedular rating criteria discussed above. Specifically, the Board has reviewed all of his relevant symptoms related to the issues on appeal, and concludes that there are no symptoms that were not able to be addressed by the applicable diagnostic codes. See Mittleider v. West, 11 Vet. App. 181 (1998). 

For example, when the Board denied entitlement to an increased rating for the Veteran's right ankle disability on a schedular basis in January 2012, it applied diagnostic codes that address primarily limitation in range of motion. See 38 C.F.R. § 4.71a, DCs 5003, 5270 and 5271. When considering whether a schedular rating is warranted for a musculoskeletal disorder, the Board has the responsibility to also consider functional loss. See DeLuca v. Brown, 8 Vet. App. 202 (1995). While the Veteran's ankle disability was primarily characterized by pain when he walks, this is functional loss, and has already been considered by the Board. As such, the Veteran's symptoms are not which are so unusual that they are outside the schedular criteria. 

As for the Veteran's spermatocele, while 38 C.F.R. § 4.115b, DC 7525 does not specifically address pain (which was the Veteran's primary symptom), it does address the need for treatment such as long-term therapy, hospitalizations and "intermittent intensive management." In the Board's view, testicular pain is a symptom for which, if sufficiently severe, "intermittent intensive management" would have been warranted. As such, DC 7525 is sufficiently broad in order to address all of the Veteran's stated symptoms. 

The Board further notes that under Johnson v. McDonald, 762 F.3d 1362 (Fed.Cir. 2014), a Veteran may be awarded an extraschedular rating based upon the combined effect of multiple conditions in an exceptional circumstance where the evaluation of the individual conditions fails to capture all the service-connected disabilities experienced. However, in this case, after applying the benefit of the doubt under of Mittleider v. West, 11 Vet. App. 181 (1998), there are no additional service-connected disabilities that have not been attributed to a specific service-connected condition. Accordingly, this is not an exceptional circumstance in which extraschedular consideration may be required to compensate the Veteran for a disability that can be attributed only to the combined effect of multiple conditions. 


Therefore, given that the applicable schedular rating criteria are more than adequate in this case, the Board need not consider whether the Veteran's disability picture includes exceptional factors, and referral for consideration of the assignment of a disability evaluation on an extraschedular basis is not warranted. See Thun, 22 Vet. App. at 111; see also Bagwell v. Brown, 9 Vet. App. 337, 338-9 (1996); Floyd v. Brown, 9 Vet. App. 88, 96 (1996); Shipwash v. Brown, 8 Vet. App. 218, 227 (1995).

TDIU

Total disability is considered to exist when there is any impairment which is sufficient to render it impossible for the average person to follow a substantially gainful occupation. 38 C.F.R. § 3.340(a)(1). A total disability rating for compensation purposes may be assigned on the basis of individual unemployability when the disabled person is, in the judgment of the rating agency, unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities. 38 C.F.R. § 4.16(a). In such an instance, if there is only one such disability, it must be rated at 60 percent or more; if there are two or more disabilities, at least one disability must be rated at 40 percent or more, and sufficient additional disability must bring the combined rating to 70 percent or more. Id.

If a Veteran fails to meet the threshold minimum percentage standards enunciated in 38 C.F.R. § 4.16(a), rating boards should refer to the Director of Compensation and Pension Service for extra-schedular consideration all cases where the Veteran is unable to secure or follow a substantially gainful occupation by reason of service-connected disability. 38 C.F.R. § 4.16(b). See also Fanning v. Brown, 4 Vet. App. 225 (1993).

Thus, the Board must evaluate whether there are circumstances in the Veteran's case, apart from any non-service-connected conditions and advancing age, which would justify a TDIU. 38 C.F.R. §§ 3.341(a), 4.19. See Van Hoose v. Brown, 4 Vet. App. 361 (1993); see also Hodges v. Brown, 5 Vet. App. 375 (1993); Blackburn v. Brown, 4 Vet. App. 395 (1993). The Veteran's service-connected disabilities, employment history, educational and vocational attainment, and all other factors having a bearing on the issue must be addressed. 38 C.F.R. § 4.16(b).

In this case, the Veteran has been service-connected for an acquired psychiatric disorder (with a 70 percent rating prior to April 27, 2012, and a 100 percent rating since that date), a right ankle fracture (10 percent), hypertension, residuals of a fracture to the radial head and a left testicular spermatocele (all noncompensable). While he has disagreed with the effective date of his 100 percent rating, he nevertheless had a single disability rated at 60 percent or more for the entire period on appeal. The schedular requirements for TDIU have thereby been met. 

The evidence of record also indicates to the Board that the Veteran is unemployable due to his service-connected acquired psychiatric disorder. 
The record indicates that he was hospitalized for inpatient psychiatric treatment in March 2007 for symptoms of suicidal ideation. At that time, he reported that he was unable to find a job. At his VA psychiatric examination in November 2008, he stated that he had not worked since 2004. During that examination, he stated that he left his employment due to his hypertension. However, evidence from when he was actually employed in 2004 and 2005 reflects that he found the work stressful and that he was "barely able to handle the job." 

Additionally, at his hearing before the Board in January 2011, the Veteran stated that he could not control his moods, but that he also has an "aversion to doctors." The Board also notes that his testimony on this occasion was very unfocused and meandering to the extent that, while he did not specifically articulate the impact of his psychiatric disorder on his employability, it is obvious to the reasonable observer that his likelihood of stable employment is minimal. 

Overall, it is true that no treating physician has provided an opinion as to whether the Veteran was unemployable due to his service-connected psychiatric disorder prior to his receiving a 100 percent disability rating on April 27, 2012. However, it is clear to the Board that his psychiatric functioning and he employment potential prior to this date was significantly limited. Moreover, the absence of a medical opinion does not preclude the Board from making its own determination. Geib v. Shinseki, 733 F.3d 1350 (Fed. Cir. 2013) ("applicable regulations place responsibility for the ultimate TDIU determination on the VA, not a medical examiner"). TDIU is warranted prior to April 27, 2012. 

As for the period since April 27, 2012, the Board relies on the opinions of a VA examiner who performed a psychiatric evaluation in April 2012. There, the 
Veteran stated that he had chronic anxiety and that he was unable to sleep. Upon examination, he showed signs of neglect and poor hygiene, as well as evidence of hallucinations. He reported no hobbies and recreational activities. After the examination was completed, the examiner found that there was "total occupational and social impairment," and that he was precluded from obtaining substantially gainful employment. 

The Board notes that, based on this VA examination, the Veteran is already in receipt of a 100 percent schedular rating for his PTSD since April 27, 2012. As such, the grant of TDIU since this date will not result in any additional benefit since this period. However, this does not mean that the issue of TDIU is moot since this date. Rather, the United States Court of Appeals for Veterans Claims (Court) has held that that a grant of TDIU may satisfy the "disability rated as total requirement" for purposes of establishing entitlement to special monthly compensation (SMC) under 38 U.S.C.A. § 1114(s). Bradley v. Peake, 22 Vet. App. 280, 291 (2008). Thus, for example, if the evidence establishes that the Veteran is unemployable due to a certain disability, and the combined disability rating of his remaining service-connected disabilities is 60 percent or more, he would eligible for SMC. See also Guerra v. Shinseki, 642 F.3d 1046 (Fed. Cir. 2011). Therefore, even though he already receives a 100 percent schedular rating, TDIU is still warranted for the period since April 27, 2012, as well. 


ORDER

An initial compensable rating for a left testicular spermatocele is denied. 

A rating in excess of 10 percent for a right ankle disability on an extraschedular basis is denied. 

TDIU is granted, subject to the laws and regulations governing the payment of monetary benefits. 


REMAND

In a February 2013 rating decision, the Veteran was granted a 100 percent disability rating for his acquired psychiatric disability, effective April 27, 2012. The Veteran submitted a notice of disagreement (NOD) in April 2013 with respect to the assigned effective date. As the Veteran has submitted a timely NOD to this issue, a statement of the case addressing that issue should be issued. Manlincon v. West, 12 Vet. App. 238 (1999); Godfrey v. Brown, 7 Vet. App. 398, 408-410 (1995); Archbold v. Brown, 9 Vet. App. 124 (1996). 

Accordingly, the case is REMANDED for the following action:

(Please note, this appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c). Expedited handling is requested.)

Issue a statement of the case on the issue of entitlement to an effective date prior to April 27, 2012, for the assignment of a 100 percent disability rating for the Veteran's service-connected acquired psychiatric disorder. The Veteran must be informed of his appeal rights and that he must file a timely substantive appeal to perfect an appeal on that issue. If an appeal is perfected, return the case to the Board.

The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014 & Supp. 2015).




______________________________________________
MICHAEL A. HERMAN
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs